TOWN CRIER, INC., d/b/a Townside Partners Realtors, and Carter V. Boehm, Plaintiffs,

v.

John Barrington HUME, Authorized Representative Member for Each and Every Member of Syndicate 553 of Lloyd's, London, Defendant.

Civ. A. No. 89–0323–A.

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 14, 1989.

Jeffrey Rosenfeld, Cynthia T. McLaughlin, Falcone & Rosenfeld, Ltd., Fairfax, Va., for plaintiffs.

Beverly W. Snukals, Mezzullo, McCandlish & Framme, Richmond, Va., for defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Background

An insurer's duty to defend is unquestionably broader than its duty to indemnify. The limits of this broader duty are often difficult to discern. This case presents just such a question. More specifically, the question presented here is whether the issuer of a professional errors & omissions liability policy is obligated to defend an insured against claims of intentional tortious conduct where the policy excludes such claims.

Plaintiff Town Crier is a Virginia corporation engaged in the real estate business. Plaintiff Boehm is a real estate broker licensed by the Virginia Real Estate Commission. He is also an executive officer, a member of the Board of Directors, and a stockholder of Town Crier, Inc.

Defendant is the authorized representative for Syndicate 553 of Lloyd's of London (the "Syndicate")[1]. In 1986, the Syndicate issued a professional liability policy to Town Crier. The policy was effective

---

1. Lloyd's of London is a self-governing insurance market in which associations of individual insurance underwriters band together in syndicates to provide insurance underwriting services throughout the world. Each underwriter acts solely for his own account. Because underwriting members take no active role and have no personal knowledge of a syndicate's underwriting and claims decisions, it is a longstanding custom at Lloyd's for each syndicate member to appear through a named representative. The terms of membership in a syndicate require underwriting members to agree to be bound by the findings of the court in any lawsuit against the syndicate. Defendant Hume is the named representative for the syndicate in this case.

retroactively from Jan. 16, 1984 to Jan. 16, 1987 and covered the actions of "the organization ... and any executive officer, members of the board of trustees, directors or governors or stockholders thereof, but only while acting within scope of his duties as such." Both plaintiffs (the "Insureds") meet the definition of "insured" under the policy.

The express terms of the policy are central to the resolution of this case. The policy provides $100,000 in liability coverage for damages "arising only out of the negligent act(s), error(s) or omission(s)" in the performance of the Insureds' normal professional business operations.[2] Also included in this policy is a duty on the part of the Syndicate to defend the Insured in any claim pertaining to the subject matter of the policy.[3] Importantly, however, both the liability coverage and the duty to defend are subject to several exclusions, violation of which extinguishes the Syndicate's obligations with respect to that specific claim. These exclusions include any claims against the Insureds arising from "any intentional, dishonest, fraudulent, criminal, malicious, or knowingly wrongful acts" or "the violation of any law, statute, ordinance or regulation of ... State ... government...."[4]

On Oct. 21, 1986, the Insureds and seven others were sued in Arlington County Circuit Court by two individuals and their three limited partnerships. The claims in the state suit stem from sales of apartments in an Arlington real estate cooperative. The state plaintiffs purchased ownership interests in various apartments in the cooperative.[5] It appears the state plaintiffs subsequently defaulted on their obligations to the cooperative. Foreclosure proceedings followed. The state suit was brought in response to the foreclosure proceedings. In the state suit motion for judgment, the aggrieved parties sought relief for various intentional acts, including fraud, unconscionability, and conspiracy to injure plaintiff's business, trade or profession. The Insureds were named as state defendants because they had acted as brokers for the transactions and had actively participated in the negotiations.

Once served, the Insureds notified the Syndicate (through its agent) of the state suit. The Syndicate responded, denying any duty to defend or indemnify the Insureds because the state suit alleged "intentional [acts] and therefore [did] not appear to arise out of negligent acts, errors or omissions as required under the policy." Additionally, the letter indicated that some of the acts complained of occurred before the policy's retroactive date of January 16, 1984. Faced with the Syndicate's refusal to defend the state action, the Insureds retained private counsel to conduct their defense. Now they seek recovery of their

---

**2.** The policy's coverage provision states:
   1. Claims Made Provision: The [Syndicate] will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages arising only out of negligent act(s), error(s) or omission(s) in the rendering of, or in the failure to render, such professional services as are regularly or customarily rendered in the professional operations of the Insured,....

**3.** The Insurer's duty to defend is defined in the policy as follows:
   2. Defense ... of the Insured:
   (a) With respect to the coverage afforded by this insurance, the [Syndicate] shall defend any claim or suit in the name of and on behalf of the insured and pay the costs and expenses incurred in such defense,....

**4.** The policy's exclusion provisions state:
   The Insuring Agreements and all other provisions of this policy shall not apply to any claim(s), or defense thereof, or any claims expenses for or arising out of: ...
   (b) any intentional, dishonest, fraudulent, criminal, malicious, or knowingly wrongful acts; ...
   (i) the violation of any law, statute, ordinance or regulation of Federal, State, local government or any agencies or instrumentalities thereof.

**5.** The Virginia Real Estate Cooperative Act, Va. Code Ann. §§ 55–424 to 506 (Repl.Vol.1986), defines a cooperative as "real estate owned by an association, each of the members of which is entitled, by virtue of his ownership interest in the association, to exclusive possession of a unit." Va.Code Ann. § 55–426 (Repl.Vol.1986). Cooperative interest is defined as "an ownership interest in the association coupled with a possessory interest in a unit under a proprietary lease." *Id.*

defense expenses to date plus pre- and post-judgment interest, attorney's fees, and costs. They also seek a judgment declaring defendants liable to defend and indemnify plaintiffs in the state suit.[6]

The case is before the Court on cross motions for summary judgment.[7] As there are no genuinely disputed material facts, disposition by way of summary judgment is appropriate. Rule 56, Fed.R.Civ.P.. For the reasons set forth here, the Court concludes that defendant has no duty to defend the plaintiffs in their state action. Therefore, the defendants motion for summary judgment is granted and plaintiffs motion for summary judgment is denied.

### Analysis

State law applies in this diversity action. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). And it is Virginia law that applies because all relevant acts occurred here: the Syndicate issued the insurance policy in Virginia,[8] the Insureds' alleged misconduct occurred in Virginia, and the third party state suit was filed in Virginia. *See, Maryland Casualty Co. v. Burley*, 345 F.2d 138, 139 (4th Cir.1965) (Virginia law applied where insurance policies issued and incident occurred there); *American & Foreign Ins. Co. v. Church Schools*, 645 F.Supp. 628, 631 (E.D.Va.1986) (same).

In Virginia, courts interpreting insurance policies apply the standard rules of contract construction, subject, of course, to the statutory measures unique to insurance. *Harleysville Mutual Ins. Co. v. Dollins*, 201 Va. 73, 109 S.E.2d 405, 409 (1959). Because insurers typically author the policy language, however, Virginia courts routinely construe ambiguous language favorably to policy holders. Thus, ambiguous coverage clauses are generally construed to grant coverage rather than deny it. Similarly, ambiguities in coverage exclusions are construed against the insurer. *Johnson v. Insurance Co. of North America*, 232 Va. 340, 350 S.E.2d 616, 619 (1986); *St. Paul Fire & Marine Ins. Co. v. S.L. Nusbaum & Co.*, 227 Va. 407, 316 S.E.2d 734, 736 (1984); *Ayres v. Harleysville Mut. Casualty Co.*, 172 Va. 383, 2 S.E.2d 303, 305 (1939). Additionally, the insurer bears the burden of proof that an exclusion applies. *Johnson*, 350 S.E.2d at 619; *White v. State Farm*, 208 Va. 394, 157 S.E.2d 925, 927 (1967). But, these rules do not authorize a court to rewrite the policy for the parties, nor to construe a policy contrary to its plain language or to the parties' intent. *Ocean Accident & Guar. Corp. v. Washington Brick & Terra Cotta Co.*, 148 Va. 829, 139 S.E. 513, 517 (1927) (hereinafter *Washington Brick*). This discussion of insurance policy construction rules is pertinent here because, at common law, an insurer does not have a duty to defend.[9] The duty to defend is purely contractual.

In general, insurance contracts contain three main duties: the insurer's duty to indemnify, the insurer's duty to defend, and the insured's duty to pay premiums. These duties are the essence of the bargain. The insurer's two duties are separate responsibilities, and, for sound policy reasons, the scope of coverage for each is different. Thus, courts interpreting insurance policies have consistently construed the duty to defend as being broader than the duty to indemnify. This construction, from the insurer's perspective, is both sensible and desirable. It reflects the insurer's strong interest in minimizing its exposure in any case in which it may have a duty to indemnify. Insurers can best vindicate this interest by having the right to conduct, or to participate in, the defense of

---

**6.** The underlying state suit remains unresolved; it is presently on interlocutory appeal to the Virginia Supreme Court on a matter unrelated to this litigation.

**7.** This Court has subject matter jurisdiction in this suit because diversity of citizenship and the requisite amount in controversy are present. 28 U.S.C. § 1332.

**8.** The policy was issued by Atlas Underwriters, Ltd. of Richmond, Virginia acting as agent for the Syndicate.

**9.** For an informative discussion of the background of insurance policies and the scope of an insurer's duty to defend see Janquitto, *Insurer's Duty to Defend in Maryland*, 18 U.Balt.L. Rev. 1 (1988).

the claims. But this interest manifestly disappears if, assuming the claims were to succeed, the insured would have no duty to indemnify. Thus, the duty to defend, even though broader than the duty to indemnify, has, at some point, a limit. Defining that limit in the context of multiple claims is the issue presented here.

The seminal Virginia decision on this issue appears to be *Washington Brick*, a tort suit against an employer for the death of an employee—an underage child. The insurance policy there in issue provided both a duty to indemnify and a duty to defend such tort claims. Yet the policy also explicitly excluded coverage in the event the employee had been illegally employed.[10] This was important because the underlying claim was based solely on the violation of the child labor statute. 139 S.E. at 516–17. On these facts, the Virginia Special Court of Appeals held that the insurer had no duty to defend the suit. In reaching this decision the court cited with approval decisions of other states involving cases with multiple negligence claims arising from the same transaction, but alleging different theories of recovery. Under some of these theories, coverage was provided; under others, it was not. Courts in these cases had held that the insurance companies had a right and a duty to participate in the defense, at least as to the

claims covered by the policy, due to the potential liability arising from their duty to indemnify. *Id.* at 516. The Special Court of Appeals in effect distinguished these decisions on the ground that the policy then before it covered none of the claims. Under this circumstance, the Court reasoned that it would be illogical to force an insurer to defend a suit in which there was no possibility of an indemnification. Should the insurer do so, it was possible that it could be held liable for any judgment against the insured.[11] The wiser course in such situations, the court stated, was for the insurer to "refrain from interfering in any way with the insured in respect to its defense of the case." *Id.* at 517.

Virginia courts have consistently followed the *Washington Brick* rule and rationale. A more recent decision put the rule in these terms:

If the allegations state a case which may be covered by the policy, [the insurer] has a duty to defend, and it may be liable also to pay any judgment rendered upon those allegations. On the other hand, if it appears clearly that [the insurer] would not be liable under its contract for any judgment based upon the allegations, it has no duty even to defend.[12]

*Travelers Indem. Co. v. Obenshain,* 219 Va. 44, 245 S.E.2d 247, 249 (1978).[13] Virgi-

---

**10.** Such exclusions, common in that era, were a reflection of the pervasiveness of child labor and of the courts' antipathy towards it. An employer was considered to be *per se* negligent for any injury incurred by a child employed in violation of the child labor statutes. *Washington Brick,* 139 S.E. at 515.

**11.** Even today, if an insurer undertakes to defend an insured despite knowledge of some breach or exclusion that excuses coverage, the insurer is estopped subsequently to deny coverage unless it properly reserves its right to do so. *Norman v. Insurance Co. of North America,* 218 Va. 718, 239 S.E.2d 902, 906–07 (1978); *Nationwide Mut. Ins. Co. v. Gentry,* 202 Va. 338, 117 S.E.2d 76, 81 (1960).

**12.** The Virginia rule appears to be the combination of what are commonly referred to as the Exclusive Pleading Rule and the Potentiality Rule. The Exclusive Pleading Rule means that an insurer's duty to defend is determined solely by the allegations in the pleadings. *See, e.g., Western World Ins. v. Harford Mut. Ins. Co.,* 784

F.2d 558, 562 (4th Cir.1986). The Potentiality Rule sets a broad outer boundary on the Exclusive Pleading Rule by stating that the insurer must still defend if there is any "potentiality" that the claim, as stated in the pleadings, could be covered by the policy. *Id.* For an interesting discussion of these rules, see Janquitto, *supra* note 9, at 7–17.

The soundness of the Virginia rule is evident. It logically bases the duty to defend on the claims in the complaint. It also minimizes potential conflict between the insured and the insurer by limiting the defense duty to cases where the insurer has some risk to indemnify. To the extent that the risk is not eliminated, it is ameliorated by the insurer's duty to issue a reservation of rights notice with respect to any claims not covered. In those instances, insureds may retain personal counsel to represent their interests or to monitor the conduct of the defense by the insurer.

**13.** *See also United States Fire Ins. Co. v. Aspen Bldg. Corp.,* 235 Va. 263, 367 S.E.2d 478, 479 (1988); *Reisen v. Aetna Life and Casualty Co.,*

nia courts have also had occasion to apply this rule in cases involving coverage exclusions for intentional conduct essentially similar to those present here. *See, e.g., Johnson v. Insurance Co. of North America,* 232 Va. 340, 350 S.E.2d 616, 620 (1986) (duty to defend excused where insured shot plaintiff; though mentally ill and incapable of differentiating right from wrong, insured knew the nature and quality of his act and intended to do it); *Reisen v. Aetna Life & Casualty Co.,* 225 Va. 327, 302 S.E.2d 529, 534 (1983) (duty to defend excused where insured's intentional act of striking plaintiff with car fell within policy's exclusion); *Travelers Indem. Co. v. Obenshain,* 219 Va. 44, 245 S.E.2d 247, 249 (1978) (duty to defend excused where complaint alleged only intentional acts and insured had been convicted of malicious wounding); *Norman v. Insurance Co. of North America,* 218 Va. 718, 239 S.E.2d 902, 905–06 (1978) (duty to defend excused where complaint alleged assault and battery).

Using the general Virginia rule and these cases as a lens, the next step is to examine the allegations in the case at bar and determine whether they state any claim that might fall within the policy's coverage. This analysis requires examination of (i) the policy's scope of coverage and (ii) the complaint's claims to determine whether any claims alleged fall within the policy's coverage. *See United States Fire Ins. Co. v. Aspen Bldg. Corp.,* 235 Va. 263, 367 S.E.2d 478, 479 (1988); *Parker v. Hartford Fire Ins. Co.,* 222 Va. 33, 278 S.E.2d 803, 804 (1981); *Travelers Indemnity Co. v. Obenshain,* 219 Va. 44, 245 S.E.2d 247, 249 (1978); *London Guar. & Accident Co. v. C.B. White & Bros., Inc.,* 188 Va. 195, 49 S.E.2d 254, 256 (1948).[14]

The policy language clearly reflects the parties' intent to extend coverage only to the Insureds' negligent acts. For example, the coverage section states that the Syndicate will indemnify the Insureds for "damages arising *only* out of negligent act(s), error(s), or omission(s) in the rendering of, or in the failure to render, such professional services as are regularly or customarily rendered in the professional operations of the Insured" (emphasis added). Additionally, the policy specifically excludes indemnity *and* the duty to defend for "any intentional, dishonest, fraudulent, criminal, malicious, or knowingly wrongful acts" and for "the violation of any law, statute, ordinance or regulation...." Plainer language is difficult to imagine.

■ A review of the underlying state complaint in this case clearly indicates that all the allegations assert claims for intentional or willful wrongful conduct or a violation of state law. In the first part of the motion for judgment, the state plaintiffs allege a conspiracy by the nine defendants, including the Insureds, whereby the plaintiffs were lured into buying the cooperative apartments ("units") by misrepresentations made by the defendants. The plaintiffs bought these units as investment property, intending to earn profits from leasing the units to others. The alleged misrepresentations used by the Insureds to induce plaintiff's purchases included:

(1) over-appraisals of the units so that the purchasers would receive cash back upon closing;

(2) statements that only individual purchasers, and not corporations or partnerships, could purchase the units;

(3) statements that purchasers could rent out their units for terms less than thirty days even though the cooperative's by-laws required such leases to be at least six months long;

(4) statements that one of the defendants was about to liquidate its holdings of 200 units in the cooperative;

(5) statements that the units and their respective buildings were in good physical shape and that the cooperative's maintenance fees would remain fixed;

225 Va. 327, 302 S.E.2d 529, 531 (1983); *Parker v. Hartford Fire Ins. Co.,* 222 Va. 33, 278 S.E.2d 803, 804 (1981); *Lerner v. General Ins. Co. of America,* 219 Va. 101, 245 S.E.2d 249, 251 (1978); *London Guar. & Accident Co. v. C.B. White & Bros.,* 188 Va. 195, 49 S.E.2d 254, 256 (1948); *Washington Brick,* 139 S.E. at 517.

**14.** This test is sometimes referred to as the Comparison test. Janquitto, *supra* note 9, at 17–22.

(6) statements that one of the defendants would pay the cooperative maintenance fees on the units for two years following their purchase.

While the recitation of several of these misrepresentations did not specifically include allegations of knowledge or intent, any doubt as to the essence of this section of the complaint is removed by Paragraph 27:

> Boehm and [another state defendant], as well as their agents and employees, knowingly misrepresented the material facts alleged above, knowing them to be false, with the intent to mislead [the state plaintiffs] to rely on such facts and knowing that [the state plaintiffs] would in fact rely on such facts in deciding to purchase units at [the cooperative]....

Paragraph 27 clearly delineates a prima facie claim of actual fraud or intentional misrepresentation under Virginia law. *Cheatle v. Rudd's Swimming Pool Supply Co.*, 234 Va. 207, 360 S.E.2d 828, 832 (1987); *Packard Norfolk, Inc. v. Miller*, 198 Va. 557, 95 S.E.2d 207, 213 (1956) (citing *Jefferson Std. Life Ins. Co. v. Hedrick*, 181 Va. 824, 27 S.E.2d 198, 202 (1943)). The misrepresentation claim therefore plainly falls within the policy's exclusion for intentional acts. From this, it follows that this claim is not within the Syndicate's duty to defend or its duty to indemnify.

Similarly, the remainder of the complaint goes on to claim relief for the violation of two statutes by the state defendants. Specifically, the complaint alleges that the defendants conspired to injure plaintiffs' business, trade and profession in violation of the Code of Virginia. Va.Code Ann. §§ 18.-2–499 and 18.2–500 (Repl.Vol.1988). Additionally, it alleges that the transactions were "unconscionable" in violation of the Virginia Real Estate Cooperative Act. Va. Code Ann. §§ 55–424 to 506 (Repl.Vol. 1986). These claims fall squarely within the policy's exclusion for violation of state statutes and, therefore, are also not within the policy's coverage.

In sum, all claims in the state complaint seek relief only for injuries caused either knowingly or intentionally by the Insureds, or for injuries caused by a violation of a statute. As such these claims are excluded from policy coverage. Indeed, it is plain that even if the state plaintiffs were successful on any of these claims, the Syndicate would have no duty to indemnify the Insureds. It follows, therefore, that the Syndicate has no duty to defend the Insureds.

The conclusion is firmly supported by Virginia authority, most notably *Travelers Indem. Co. v. Obenshain*, 219 Va. 44, 245 S.E.2d 247 (1978). There, the insured deliberately shot two individuals over a debt. The victims subsequently sued the insured for their injuries alleging intentional tort claims. The insurer filed a declaratory judgment action seeking to establish that a coverage exclusion for intentional acts excused its duties to defend and indemnify the insured. The trial court, without stating a reason, held that the insurer had to defend. On an appeal, the victims argued that the trial court had apparently found that the shooting was not intentional because the insured was insane. The Supreme Court of Virginia reversed; relying on the insured's conviction for malicious wounding, the Court held there was no duty to defend because the victims' complaint claimed recovery only for intentional acts.

To avoid this result, the Insureds argue that some allegations in the complaint include the elements of unintentional torts that fall within the policy's coverage. Specifically, they argue that the allegations of fraud include the elements of the tort of negligent misrepresentation, which is recognized in Virginia. This argument ignores the vital distinction between the claims or causes of action asserted on the one hand and allegations on the other. Only claims or causes of action give rise to relief and then only if all the elements of a claim are proved. Allegations are components of claims or causes, but are not, by themselves, a basis for relief. The claim/allegation distinction is vividly illustrated in this context by noting that if the state plaintiffs, in their claim for actual fraud, establish all the elements of misrepresentation, but fail to establish scienter, the fraud claim fails. They are not entitled

to a "lesser included offense" instruction on negligent misrepresentation.[15]

In sum, a plaintiff's relief in a civil action is limited to his complaint; he can only recover a judgment for the claims set forth in his complaint. The fact that some of the allegations in the case at bar could establish a case for negligent misrepresentation is immaterial because that claim is not made. All the claims in the complaint in issue seek recovery for either intentional harms or for violations of state law and are therefore excluded from coverage. Since there can be no duty to indemnify, there is no duty to defend.[16]

In their brief, the Insureds rely primarily on two cases: *Parker v. Hartford Ins. Co.*, 222 Va. 33, 278 S.E.2d 803 (1981), and *Jefferson–Pilot Fire & Casualty Co. v. Boothe, Prichard & Dudley*, 638 F.2d 670 (4th Cir.1980) (hereinafter *Boothe, Prichard*). This reliance is misplaced; the Insureds misconstrue the holding in both cases. In *Parker*, the Virginia Supreme Court required an insurer to defend a suit for intentional trespass even though the policy excluded coverage for property damage caused by intentional acts. The underlying claim alleged only the intentional trespass and not a negligent trespass. The Insureds correctly cite *Parker* for the proposition that "[o]nly when 'it appears clearly [the insurer] would not be liable under its

contract for any judgment based upon the allegations,' does the company have no duty to defend." *Parker*, 278 S.E.2d at 804 (quoting *Travelers v. Obenshain*, 219 Va. 44, 245 S.E.2d 247, 249 (1978)). But they mistakenly suggest that *Parker* also stands for the general proposition that as long as the allegations in a complaint could support any judgment for a risk covered by an insurance policy, an insurer must defend, even if the claim for the judgment was not before the court. This argument stretches *Parker* too far; no such general proposition exists. The *Parker* court found a duty to defend for reasons unique to Virginia trespass law; reasons that have no application here.

Specifically, the key distinction in *Parker* is that Virginia case law allows a plaintiff to recover for unintentional trespass even where only an intentional trespass is alleged. *Chesapeake & O.R. Co. v. Greaver*, 110 Va. 350, 66 S.E. 59, 60 (1909). For trespass only, a claim for intentional trespass standing alone automatically states a claim for negligent trespass without further allegations. Virginia's duty to defend rules, therefore, would require an insurer to defend a suit for intentional trespass despite a policy exclusion for intentional property damage. Unlike the special case of the tort of trespass, however, there is no general rule in Virginia permitting a recov-

---

15. The briefs in this suit, and the Virginia cases in general, reflect a confusion regarding the distinction between a claim and a mere allegation. For an example of the distinction between a claim and an allegation see *American & Foreign Ins. Co. v. Church Schools*, 645 F.Supp. 628 (E.D.Va.1986) (diversity case applying Virginia law). Plaintiffs in *Church Schools* filed a claim for assault, battery, and intentional infliction of emotional distress against a private school and certain teachers and staff members. In an amended complaint, plaintiffs added claims for negligent infliction of emotional distress and negligent "improper sexual conduct." The insurance policy in that case, as here, excluded coverage for intentional torts. The court held that the additional claims of negligence failed to allege bodily injury and, as a result, failed to assert a claim for negligence. Therefore, the defendant insurer did not have a duty to defend. *Cf. Reisen v. Aetna Life and Casualty Co.*, 225 Va. 327, 302 S.E.2d 529 (1983) (upholding declaratory judgment that insurer had no duty to defend under a policy excluding coverage for intentional torts where jury found defendant

had intentionally struck plaintiff with a car despite fact that plaintiff asserted both negligence and intentional torts claims in his complaint).

16. Not presented here is the question whether a complaint may be amended to include unintentional tort claims and thereby create a duty to defend. Pleading amendments are governed by Rule 15, Fed.R.Civ.P., and may not be granted where the amendment offered is untimely or prejudicial. A court faced with such an amendment may consider prejudice to the insurer as well as prejudice to the insured. Even if the amendment is permitted, insurers may still seek a declaratory judgment to establish that the added claims are frivolous and therefore do not create a duty to defend. *See American & Foreign Ins. Co. v. Church Schools*, 645 F.Supp. 628 (E.D.Va.1986); *cf. Reisen v. Aetna Life & Casualty Co.*, 225 Va. 327, 302 S.E.2d 529 (1983) (declaratory judgment action held insured's acts intentional and excused duty to defend despite claims of both negligence and intentional torts in complaint).

ery for less culpable torts than are claimed in the complaint. As noted before, a plaintiff is entitled only to relief for claims stated in the complaint; Virginia law does not recognize a "lesser included tort" rule.

Equally misplaced is the Insureds' reliance on *Boothe, Prichard.* There, the question was whether an insurer owed its insured, a law firm, a duty to defend in a case charging the law firm with an antitrust violation. The *Boothe, Prichard* policy did not apply "(a) to any dishonest, fraudulent, criminal or malicious act or omission of the insured." 638 F.2d at 674. On these facts, the Fourth Circuit held that a duty to defend existed because an antitrust violation was not necessarily dishonest, fraudulent, criminal or malicious. In effect, the exclusion language was narrowly construed against the insurer. In sharp contrast, the policy exclusions here are unambiguously broader; they are unquestionably broad enough to exclude coverage for all the claims asserted against the Insureds. There can be no coverage for the fraud claim by virtue of the clause excluding coverage for intentional acts. There can be no coverage for the conspiracy to injure plaintiffs' business and for the unconscionability claims by virtue of the clause excluding coverage for statutory violations—a provision not contained in the *Boothe, Prichard* policy. While the language of an insurance policy should be construed narrowly against the insurer, this is no license for courts to rewrite the parties' contract. Contracts remain, ultimately, an embodiment of the intent of the parties. The Syndicate here contracted to provide indemnity and defense expenses to cover a certain class of claims. The Insureds invite the Court to broaden this class beyond what they are entitled to as a matter of contract and as a matter of law. The Court declines this invitation.

An appropriate order has issued.

The clerk is directed to send copies of this Memorandum Opinion to all counsel of record.