**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATIONAL FRUIT PRODUCT COMPANY,
INCORPORATED,
Plaintiff-Appellant,

v.

No. 98-1471

FIREMAN'S FUND INSURANCE
COMPANY; LUMBERMENS MUTUAL
CASUALTY COMPANY; LIBERTY
MUTUAL FIRE INSURANCE COMPANY,
Defendants-Appellees.

Appeal from the United States District Court
for the Western District of Virginia, at Harrisonburg.
B. Waugh Crigler, Magistrate Judge.
(CA-96-122-H)

Argued: January 28, 1999

Decided: May 4, 1999

Before WILKINSON, Chief Judge, TRAXLER, Circuit Judge,
and GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Stephan G. Weil, DICKSTEIN, SHAPIRO, MORIN &
OSHINSKY, L.L.P., Washington, D.C., for Appellant. Daniel Leroy

Fitch, WHARTON, ALDHIZER & WEAVER, P.L.C., Harrisonburg, Virginia; Thomas Grasty Bell, Jr., TIMBERLAKE, SMITH, THOMAS & MOSES, P.C., Staunton, Virginia, for Appellees. **ON BRIEF:** Mark H. Kolman, Laura A. Vikander, DICKSTEIN, SHAPIRO, MORIN & OSHINSKY, L.L.P., Washington, D.C.; Thomas Moore Lawson, THOMAS MOORE LAWSON, P.C., Winchester, Virginia, for Appellant. Ralph N. Boccarosse, Jr., SICILIANO, ELLIS, DYER & BOCCAROSSE, Fairfax, Virginia, for Appellee Liberty Mutual.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The plaintiff, National Fruit Product Company, Inc. (NFP), filed the present action against the defendants Fireman's Fund Insurance Company (Fireman's Fund), Lumbermens Mutual Casualty Company (Lumbermens), and Liberty Mutual Fire Insurance Company (Liberty Mutual) (collectively defendants), alleging breach of contract. The district court granted summary judgment in favor of the defendants and denied NFP's motion for partial summary judgment. Because Count IV of Nelson's complaint is clearly a cause of action alleging NFP's vicarious liability for its employee's intentional conduct and not a separate assertion of negligence against NFP, we find that the defendants had no duty to defend the underlying action and therefore did not breach the contract. Therefore, we affirm, although for reasons somewhat different from those stated by the district court.

I.

A.

During 1993 and 1994, NFP was insured by the defendants. Fireman's Fund provided NFP with commercial general liability coverage

2

from January 1, 1993 to December 31, 1993. The policy limit was $1.5 million per occurrence. For the period from January 1, 1994 to January 1, 1995, Lumbermens issued a virtually identical general liability policy to NFP except that the policy limit was $1 million per occurrence. Liberty Mutual provided workers compensation coverage to NFP for the period between January 1, 1993 and January 1, 1994, with a policy limit of $500,000 and a defense cost deductible of $200,000.

Both the Fireman's Fund and Lumbermens policies required that the insurer (1) pay "those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies," and (2) "defend any suit seeking those damages." (J.A. at 126, 149.) Both policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." (J.A. at 135, 157.) The insurance policies covered only bodily injury which was "caused by an occurrence" and which "occurs during the policy period." (J.A. at 126, 149.) Both policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (J.A. at 136, 159.) Both policies contain language that excludes coverage for bodily injury that is "expected or intended from the standpoint of the insured," (J.A. at 126, 149), or that "aris[es] out of and in the course of employment by the insured." (J.A. at 127, 150.) Finally, both policies establish that for corporations like NFP, "executive officers and directors are insureds, but only with respect to their duties as officers and directors" while employees are insureds "only for acts within the scope of their employment . . . ." (J.A. at 131, 154.)

The Liberty Mutual policy obligated the insurer to pay all amounts that NFP became legally obligated to pay as damages for bodily injury suffered by an NFP employee in the course of the employee's employment. (J.A. at 564.) Liberty Mutual's coverage was limited to "bodily injury by accident" that occurs "during the policy period." (Id.) There is essentially no difference between the "bodily injury by accident" language in the Liberty Mutual policy and the "bodily injury" arising from an "occurrence" provision in the Fireman's Fund and Lumbermens's policies. The Liberty Mutual policy specifically excludes coverage for "bodily injury intentionally caused or aggra-

3

vated by [NFP]" (J.A. at 565), but it does not contain an exclusion for bodily injury arising out of and in the course of employment.

B.

The issues in this case revolve around the defendants' denial of coverage for NFP's defense of claims brought against it by Stacey Nelson (Nelson), a former NFP employee. In June 1995, Nelson filed suit in the Circuit Court for Kent County, Michigan, against NFP and James Mortensen (Mortensen), her immediate supervisor at the NFP facility in Kent City, Michigan. Nelson alleged that she worked for NFP from November 15, 1993, until June 27, 1994, when NFP terminated her employment. In her complaint, Nelson asserted that during the time in which she was employed by NFP, Mortensen assaulted, raped, and sexually harassed her.[1] In addition, Nelson's complaint contained three allegations against NFP: (1) that NFP, as an employer, was strictly liable for Mortensen's quid pro quo sexual harassment of Nelson (Count II), (J.A. at 169), (2) that NFP, as an employer, was liable to Nelson because it "created a cultural climate which facilitated and fostered a hostile work environment and which emboldened persons such as defendant Mortensen to make unwelcome sexual advances, engage in acts of sexual harassment, and commit acts of sexual assault" (Count IV), (J.A. at 171-72), and (3) that NFP was liable for intentionally discriminating against Nelson by wrongly terminating her in June 1994 (Count V). (J.A. at 172-73.)

_____

[1] Specifically, Nelson claimed that beginning in December 1993 and continuing through the duration of her employment, Mortensen engaged in unwanted sexual contact toward her - i.e. grabbing her breasts, touching her buttocks and touching her pubic area. Moreover, she asserted that in February 1994, Mortensen followed her to her apartment after work, made a sexual advance toward her, demanded that she undress, and requested sexual favors from her. Nelson also claimed that on a Saturday in late May 1994, she encountered Mortensen at the office and that he directed her to an unused storeroom where he forcibly assaulted and raped her. Further, Nelson alleged that a week later, she again encountered Mortensen at the office on a Saturday and he again ordered her to the storeroom where he once again raped her. In June 1994, Nelson was terminated from her employment with NFP.

4

In April 1995, prior to Nelson's filing of her complaint, NFP received a demand package outlining her allegations. NFP was served with Nelson's complaint on June 22, 1995. On December 1, 1995, NFP notified its insurance broker, Johnson & Higgins, in writing of the pending action and requested that NFP's insurers provide a defense to Nelson's claim and indemnify NFP for any amount for which it might be found liable. Thereafter, Johnson & Higgins forwarded copies of Nelson's complaint and NFP's requests to Lumbermens' and Fireman's Fund. NFP notified Liberty Mutual directly and made the same requests for a defense to the suit and indemnification. Upon receiving the notice of the complaint and NFP's request, each of the defendants disclaimed coverage and refused to pay NFP's defense or indemnify costs.

After receiving the denials from the defendants, NFP engaged in settlement negotiations with Nelson's counsel. In June 1996, NFP reached a settlement agreement with Nelson whereby NFP paid $350,000 in return for a total release of Nelson's claims against it. NFP's other defense costs totaled $210,767.91. In this action, NFP claims that the defendants breached the insurance contracts by wrongfully disclaiming NFP's claim for defense and indemnity costs. NFP seeks compensatory damages.

C.

On February 24, 1998, the district court held a hearing at which it considered NFP's partial motion for summary judgment and the defendants' motion for summary judgment. At that hearing, the district court granted summary judgment in favor of the defendants, finding that the creation of a hostile work environment, as alleged in Count IV of Nelson's complaint, could not be an"accident" that caused bodily injury. Specifically, the district court stated as follows:

> Now, that's what's going to go up on appeal. I hold that the allegations of creating a hostile work environment is not, as a matter of law, and has never been, as a matter of law, potentially an accident, to trigger either the duty to defend or eventually the responsibility to indemnify.

(J.A. at 799-800.) The district court concluded that"Fireman's Fund and Lumbermens had no duty to defend, because they had absolutely

5

clearly unambiguously no liability under the policy; and Liberty . . . likewise has no duty to defend, because it had no liability." (J.A. at 802.) NFP appeals from that ruling.

II.

A.

In reviewing a district court's grant of summary judgment, the Court views the evidence in a light most favorable to the non-moving party. Westfarm Assoc., L.P. v. Washington Suburban Sanitary Comm'n, 66 F.3d 669, 678 (4th Cir. 1995). If there are no genuine issues of material fact, then the court may enter judgment on the pleadings. Id. The review is de novo. Id.

B.

To determine whether coverage exists under an insurance policy such that a duty to defend a lawsuit is invoked, a court must compare the allegations in the underlying complaint with the terms of the policy. Town Crier, Inc. v. Hume, 721 F. Supp. 99, 103 (E.D. Va. 1989); American and Foreign Ins. Co. v. Church Schools, 645 F. Supp. 628, 631 (E.D. Va. 1986); Travelers Indem. Co. v. Obenshain, 245 S.E.2d 247, 249 (Va. 1978). In comparing the complaint and the policy, "if coverage is in doubt, the insurance company must defend." Church Schools, 645 F. Supp. at 631. However, if it is clear that an insurance company would not be liable under its contract for any judgment based upon the assertions in the underlying complaint, it has no obligation to defend. Obenshain, 245 S.E.2d at 249.

Under the terms of the policies in this case, coverage exists only if "the `bodily injury' . . . is caused by an`occurrence' that takes place in the coverage territory." (J.A. at 149, 398.) Thus, the complaint must state a cause of action that includes a "bodily injury"[2] caused by

_____

[2] Virginia courts have not interpreted the term "bodily injury," but other courts have found that such language covers physical injury to the body and not purely nonphysical or emotional harm. American and Foreign Ins. Co. v. Church Schools, 645 F. Supp. 628, 631 (E.D. Va. 1986). Moreover, allegations of physical or bodily contact does not necessarily imply bodily injury. Id.

6

an "occurrence." Under Virginia law,[3] the terms "accident" and "occurrence" are synonymous and "refer to an incident that was unexpected from the viewpoint of the insured." Utica Mutual Ins. Co. v. Travelers Indem. Co., 286 S.E.2d 225, 226 (Va. 1982). Intentional acts are neither occurrences nor accidents, so allegations based upon such conduct are not covered by the policy. Id. ; see West Am. Ins. Co. v. Bank of Isle of Wight, 673 F. Supp. 760, 765 (E.D. Va. 1987) (term "occurrence" limits coverage to damages arising from "mistake or carelessness" and not from "intentional or reckless acts"). Likewise, claims of agency liability, respondeat superior, and strict liability for the intentional acts of an agent do not impose a duty to defend. Church Schools, 645 F. Supp. at 633 (allegations of intentional torts by employee do not impose duty to defend under "occurrence" language of employer's insurance policy). However, allegations that the insured or its agent negligently, carelessly, or accidentally caused bodily injury would trigger the policy's coverage. See id.

C.

The parties' arguments focus on the interpretation of Count IV of Nelson's complaint.[4] In that count, entitled "SEXUAL HARASSMENT, HOSTILE WORK ENVIRONMENT (AGAINST NATIONAL FRUIT)," Nelson asserts the following:

> 46. Defendant Mortensen was National Fruit's plant manager and chief executive officer at its Kent City facility, and, as such, was National Fruit's agent.
>
> 47. As National Fruit's plant manager and chief execu-

_____

[3] The parties have agreed that Virginia law would apply to this appeal.
[4] Because Count V of Nelson's complaint alleged that NFP engaged in intentional sexual discrimination and wrongful conduct, it clearly is not covered by the insurance contracts. In Count II, Nelson contended that NFP is liable for Mortensen's quid pro quo sexual harassment under an agency theory. Allegations of agency liability for an employee's intentional conduct do not invoke the defendants' duty to defend or indemnify under the contracts. Realizing the futility of a claim based upon either Count II or Count V, NFP has focused its argument upon Count IV of Nelson's claim. Accordingly, the Court will do the same.

7

tive officer of its Kent City facility, National Fruit delegated authority and empowered defendant Mortensen to act in the capacity of plant manager.

48. Defendant Mortensen threatened, intimidated and coerced the plaintiff into keeping silent about his sexual harassment and sexual assaults, claiming, among other things, that he knew the top company official, Verlis Miller, and that he was friends with the local law enforcement personnel and other local authorities.

49. Because of defendant Mortensen's position as chief executive officer and because of his threats and acts of intimidation, any sexual harassment policy maintained by defendant National Fruit was meaningless, and it would have been futile for the plaintiff to have reported defendant Mortensen's sexual harassment and sexual assaults.

50. Defendant National Fruit created a cultural climate which facilitated and fostered a hostile work environment and which emboldened persons such [as] defendant Mortensen to make unwelcome sexual advances, engage in acts of sexual harassment, and commit acts of sexual assault.

51. As a result of defendant Mortensen's sexual harassment, plaintiff has suffered termination of employment, economic loss in the form of back pay, front pay and lost fringe benefits.

52. As a result of defendant Mortensen's actions, plaintiff has suffered severe mental anguish, embarrassment, humiliation, pain and suffering, and severe emotional distress.

(J.A. 171-72.) NFP claims that because Count IV does not contain any allegations of intentional acts by NFP, Nelson was asserting that NFP negligently allowed a hostile work environment to develop. In support of this position, NFP relies upon this Court's opinion in Reinhold v. Virginia, 135 F.3d 920 (4th Cir.), vacated, 151 F.3d 172

8

(4th Cir. 1998), in which it was stated that the standard for holding an employer liable for an employee's sexual harassment was whether "the employer knew or should have known of the illegal conduct and failed to take prompt and adequate remedial action." Id. at 929 (quoting Andrade v. Mayfair Management, Inc., 88 F.3d 258, 261 (4th Cir. 1996)).**5** NFP argues that given the "should have known" standard for liability, the unintentional creation of a hostile work environment is unexpected from the perspective of the insured and akin to a negligence action. As such, an allegation of "negligent" creation of a hostile work environment satisfies the "occurrence" requirement and triggers the indemnity and defense provisions in the insurance contracts.

We disagree. The complaint does not allege that NFP acted negligently in breach of a duty owed to Nelson, nor does it allege negligence by Mortensen. Indeed, the complaint is remarkably void of the type of "knew or should have known" language that would put the defendants on notice that Nelson's claim might sound in negligence. Rather, Count III of the complaint alleged only intentional conduct by Mortensen and Count IV - the claim against NFP - alleged liability on agency theories based solely upon those intentional acts.**6** Thus, it

_____

**5** In the opinion vacating the original Reinhold decision, this Court found that after the Supreme Court's holdings in Faragher v. City of Boca Raton, 524 U.S. 775, 118 S.Ct. 2275 (1998), and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 118 S.Ct. 2257 (1998), the "knew or should have known" standard was no longer applicable. Reinhold, 151 F.3d at 174-75. Under the new standard, if sexual harassment of an employee by a supervisor results in a "tangible employment action," the employer "is liable for the harassment, regardless of whether the employer knew or should have known of the harassment." Id. (citing Faragher, 524 U.S. at ___, 118 S.Ct. at 2292; Ellerth, 524 U.S. at ___, 118 S.Ct. at 2270). With respect to allegations of an actionable hostile environment based upon sex, the employer is vicariously liable for the acts of its supervisor unless the employer can prove by a preponderance of the evidence that (1) the employer exercised reasonable care to prevent and correct the offensive conduct; and (2) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer. Id. at 175 (citing Ellerth, 524 U.S. at ___, 118 S.Ct. at 2270).

**6** Specifically, paragraph 46 refers to Mortensen as NFP's agent, paragraph 47 discusses Mortensen's authority as plant manager and C.E.O. of the Kent City facility, and paragraphs 51 and 52 state that the claim is based upon the actions of Mortensen, which were unquestionably intentional.

was clear that the claims set forth in Nelson's complaint were not covered by the policies and the defendants therefore had no duty to defend or indemnify NFP. See Church Schools, 645 F. Supp. at 631; Obenshain, 245 S.E.2d at 249.

III.

For the reasons stated above, we affirm the district court's entry of summary judgment in favor of the defendants.

AFFIRMED

10