**AIR LINE PILOTS ASSOCIATION,**
**Appellant,**

v.

**TWIN CITY FIRE INSURANCE**
**COMPANY, Appellee.**

**No. 99–CV–1726.**

District of Columbia Court of Appeals.

Argued Dec. 14, 2000.

Decided July 25, 2002.

Jerry D. Anker, Washington, DC, with whom James K. Lobsenz, Herndon, VA, was on the brief, for appellant.

Thomas S. Schaufelberger, with whom Christopher A. Glaser, Washington, DC, was on the brief, for appellee.

Before FARRELL, RUIZ and WASHINGTON, Associate Judges.

WASHINGTON, Associate Judge:

Appellant, Air Line Pilots Association (ALPA), appeals the trial court's granting of a motion for summary judgment ruling that appellee, Twin City Fire Insurance Company (Twin City), did not have a duty under the applicable insurance policy to defend appellant in litigating the case of *Zumbrun v. Delta Airlines* (No. 95–4787), 1996 WL 652718 (C.D. Cal. June 24, 1996) (*Zumbrun*). Appellant further raises the issue of whether ALPA is entitled to the reasonable market value of the defense provided by its in-house counsel in the *Zumbrun* case, if reversal of the trial court's grant of summary judgment is appropriate. We affirm.

## I.

ALPA, a labor union, is the exclusive collective bargaining representative for the pilots of Western Airlines and Delta Airlines. ALPA negotiates collective bargaining agreements and represents the pilots in grievance arbitration proceedings before the System Board of Adjustments (System Board).[1] In September 1993, David Zumbrun, a former Western Airlines pilot, filed a grievance against Delta for refusing to reinstate him as a pilot following a leave of absence due to an injury.[2] Zumbrun was represented by ALPA in the grievance procedure, but ultimately he was not reinstated. In July 1995, Zumbrun filed a complaint against ALPA and Delta alleging: 1) that ALPA breached its duty to represent him fairly by conspiring with Delta to permit his discharge, and 2) intentional infliction of emotional distress by both defendants.[3] ALPA contacted Twin City in August of 1995 to notify them of the *Zumbrun* suit and request legal representation. Twin City refused to provide a defense for ALPA. ALPA's in-house counsel defended against Zumbrun's action, which was dismissed on summary judgment grounds in favor of ALPA and Delta. ALPA then filed a breach of contract complaint in Superior Court against Twin City alleging that pursuant to their insurance agreement, Twin City had a duty to provide legal representation for claims covered by the insurance contract. Both parties filed motions for summary judgment, and the trial court granted Twin City's motion. ALPA filed a timely notice of appeal to this court.

## II.

This court reviews the grant of a motion for summary judgment by the trial court *de novo*. We review the facts in the record in the light most favorable to the nonmoving party, and summary judgment is appropriate as a matter of law if there is no issue of material fact. We also apply a

1. The System Board was established pursuant to the Railway Labor Act, 45 U.S.C. § 184.

2. The System Board earlier ruled that Zumbrun had no right to become an active pilot with Delta, into which Western merged in 1987.

3. Zumbrun also claimed that Delta breached its contract with him.

*de novo* standard of review to the interpretation of an insurance contract. *See In re Estate of Corriea,* 719 A.2d 1234, 1238–39 (D.C.1998).

Both parties in this case agree that we must determine Twin City's duty to defend under the contract in accordance with Virginia law. Under Virginia law, an insurer has a duty to defend if it would be liable under its contract for any judgment based on the allegations by a complainant. *Travelers Indem. Co. v. Obenshain,* 219 Va. 44, 245 S.E.2d 247, 249 (1978). Indeed, "[o]nly where 'it appears clearly that [the insurance company] would not be liable under its contract for any judgment based upon the allegations,' does the company have no duty to defend." *Parker v. Hartford Fire Ins. Co.,* 222 Va. 33, 278 S.E.2d 803, 804 (1981) (quoting *Travelers Indem. Co.,* 245 S.E.2d at 249). Virginia courts have articulated that it is the burden of the insured to prove that the claim is covered by the policy, see *Furrow v. State Farm Mut. Auto. Ins. Co.,* 237 Va. 77, 375 S.E.2d 738, 740 (1989), while it is the burden of the insurer to prove the applicability of an exclusion. *See Johnson v. Insurance Co. of N. Am.,* 232 Va. 340, 350 S.E.2d 616, 619 (1986). "Where language in an insurance policy is susceptible of two constructions," Virginia courts have construed the language in an insurance policy "liberally in favor of the insured and strictly against the insurer," in a manner that promotes coverage for the insured. *Jefferson–Pilot Fire & Cas. Co. v. Boothe, Prichard & Dudley,* 638 F.2d 670, 674 (4th Cir.1980) (citations omitted). In addition, ambiguities that exist in the language of the insurance policy should be resolved in favor of the insured policy holder. *See Fuisz v. Selective Ins. Co.,* 61 F.3d 238, 242 (4th Cir.1995) ("if there is any ambiguity regarding potential coverage, the insurer must provide a defense").

### 1. Whether a Cause of Action was Pled for "Humiliation"

Here, ALPA argues that summary judgment was not properly granted by the trial court because the insurance policy issued by Twin City covered actions for "discrimination or humiliation," and Zumbrun's action sought damages from ALPA and Delta for "embarrassment, humiliation and mental anguish." Twin City responds that Zumbrun's complaint did not allege a personal injury cause of action covered by the policy.

In this case, the Twin City policy provided personal injury liability coverage for ALPA. The policy lists covered "offenses" that constitute personal injury, of which "discrimination or humiliation" is one. The Special Broad Form of the policy provides coverage for "[d]iscrimination or humiliation that results in injury to the feelings or reputation of a natural person...." As explained, Zumbrun's complaint alleged two causes of action against ALPA: 1) breach of duty of fair representation and 2) intentional infliction of emotional distress. Specifically, Zumbrun alleged that ALPA's representation of him was "unfair, tepid, hesitant, unprepared and incompetent and that ALPA and Delta had conspired to deny his grievance...." The gist of the complaint concerns the inadequate representation provided by ALPA, not any type of humiliation suffered as a result. We conclude that Virginia law does not require coverage in these circumstances.

Although Virginia construes insurance policies liberally in favor of coverage, the courts have consistently held that an insurance company's duty to defend is based on the substantive cause of action specifically plead in the complaint. In *American & Foreign Ins. Co. v. Church Schools,* 645 F.Supp. 628 (E.D.Va.1986), a middle school student complained that her art teacher

had "squeezed her buttocks in a sexually suggestive manner." *Id.* at 630. She and her mother alleged that when they reported the incident to the director and headmaster of the school, the school engaged in a cover-up without fairly investigating the incident. They further claimed that they were humiliated and harassed at a meeting, and that the school "humiliated [the student] at a schoolwide assembly by giving a sermon about how a jealous little school girl had ruined the life of a schoolteacher by falsely claiming sexual abuse." *Id.* The student and her mother filed a claim for assault, battery, and intentional infliction of emotional distress against the private school and certain teachers and staff members. In an amended complaint, while adding no new counts to their previous claims, they did add further allegations of negligent improper sexual contact and negligent infliction of emotional distress. Church Schools contended that these claims were covered under the "personal injury" section, which covered injuries arising out of a publication or utterance of a "libel, slander, or other defamatory or disparaging material," or which was "in violation of an individual's right of privacy." *Id.* at 631. In that case, the court held that even if the complaint contained allegations of libel, slander, defamation, or disparagement, the "mere fact that the factual allegations of a complaint contain the words 'libel' or 'disparaging' cannot form the basis for coverage under this provision ... [C]overage must be determined based on the claims under which relief is sought." *Id.* at 634. The court further stated that although the complaint did contain factual allegations relating to an invasion of privacy claim, those allegations merely supported their assault and battery and intentional infliction of emotional distress claims (which were not covered), since the complaint raised no independent substantive claim for invasion of privacy. *See id.* at 634–35.

Another case that addressed this issue was *Town Crier, Inc. v. Hume*, 721 F.Supp. 99, 104–05 (E.D.Va.1989), *aff'd*, 907 F.2d 1140 (4th Cir.1990). In that case, Town Crier, a corporation engaged in the real estate business, acted as a broker for the sales of apartments in a real estate cooperative. The state plaintiffs, who had ownership interests in various apartments in the cooperative, filed a claim against Town Crier and seven others, seeking relief for various intentional acts, including fraud, unconscionability, and conspiracy to injure their business, trade or profession. In their complaint, the state plaintiffs alleged that they were lured into buying the cooperative apartments by misrepresentations made by the defendants. Once served, Town Crier notified its insurance provider of the state suit. The insurance provider denied any duty to defend because the policy covered only "negligent acts, errors, or omissions," while the state suit alleged intentional acts. In response, the insured argued that some allegations in the complaint included elements of unintentional torts. Specifically, they argued that the allegations of fraud included the elements of the tort of negligent misrepresentation. The court ruled in favor of the insurance provider, stating that "[o]nly claims or causes of action give rise to relief and then only if all the elements of a claim are proved. Allegations are components of claims or causes, but are not, by themselves, a basis for relief." *Id.* at 104. That court further noted that "a plaintiff's relief in a civil action is limited to his complaint; he can only recover a judgment for the claims set forth in his complaint. The fact that some of the allegations in the case at bar could establish a case for negligent misrepresentation is immaterial because that claim is not made." *Id.* at 105.

ALPA claims that the policy itself does not offer a definition of "offense," and certainly does not describe "offense" as a "cause of action." ALPA asserts that Zumbrun's complaint clearly alleges that ALPA committed the "offense" of "humiliation" because the complaint alleges that ALPA engaged in certain acts (failure to fairly represent him and intentional infliction of emotional distress) that caused him to suffer the injury of "humiliation." Virginia courts, however, as we have seen, hold that coverage under a policy is determined only by the legal claims or causes of action that have been plead in a complaint. Here, the only time Zumbrun's complaint mentions "humiliation" is in the ad damnum clause, where he requests "compensatory damages for losses resulting from embarrassment, humiliation, mental anguish, and emotional distress." Indeed, not only does the complaint not assert a cause of action for humiliation, the complaint does not even allege facts describing how Zumbrun was humiliated by ALPA. The underlined case here arises from allegations of breach of contract and unfair representation; this is not a defamation case where the facts make it somewhat obvious how the plaintiff may have been humiliated. However, even if there were facts in the complaint detailing a possible claim for humiliation, pursuant to *Church Schools* and *Town Crier*, ALPA's argument still fails because factual "[a]llegations are components of claims or causes, but are not, by themselves, a basis for relief." *See Town Crier*, 721 F.Supp. at 104.

If we view the offense of "humiliation" more broadly (*i.e.*, the resulting emotion from any non-covered tort), we would seem to obligate coverage for any act committed by an insured, although not specified as a substantive offense covered by the policy. Such a conclusion collides with the Virginia court's past decisions requiring that a cause of action be specifically

pled for the covered offense. Our interpretation that the complaint's mention of humiliation was a description of injuries suffered, as opposed to a recognized tort claim, may appear to render the coverage provision for humiliation a nullity. Admittedly, the contract provision that states "discrimination or humiliation," and not "discrimination and humiliation," does cause some confusion. We think, however, that a common sense reading of the language in the contract makes sense when humiliation, which is not a known tort, is read in the context of discrimination, which can be pled as a substantive claim.

Thus, the boiler plate language in the ad damnum clause requesting damages for humiliation is insufficient under the pleading standards of Virginia law to give rise to an obligation under the insurance policy to defend against an offense of "discrimination or humiliation."

*2. Whether There is Coverage Under the Policy for a Claim for Emotional Distress Based on Discrimination or Humiliation*

 The Policy language makes clear that only unintentional conduct falls within the coverage provision. Specifically, the policy covers:

> Discrimination or humiliation that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is:

(1) *Not done intentionally by or at the direction of:*

> (a) The insured; or

> (b) Any executive officer ... of the insured ...

(Policy, Special Broad Form at 1 (emphasis added)).

ALPA contends that despite the fact that Count III of the Complaint is entitled "Intentional Infliction Of Emotional Dis-

tress," certain of the allegations contained therein, when read in conjunction with allegations from other paragraphs of the complaint, state a cause of action for negligent or unintentional infliction of emotional distress. ALPA contends that because the Twin Cities Insurance policy must be construed generously in favor of coverage for the policy holder and because negligent conduct that causes a personal injury is covered by the policy, Twin Cities had a duty to defend ALPA against the Zumbrun law suit. ALPA further contends that its request for damages for humiliation is consistent with such a legal theory. Based on a plain reading of the complaint filed in this case, however, we are confident that Virginia courts would reject such an argument. The complaint specifically pleads the following with respect to the claim for emotional distress.

### Count 3: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS: AGAINST ALL DEFENDANTS.

26. The allegations of Paragraphs 1 through 25 inclusive are realleged and incorporated herein by reference.

27. Defendants owed Plaintiff a duty of care not to create or impose any undue physical or mental stress on plaintiff.

28. Within the time period complained of, defendants breached that duty when it engaged in an intentional and dishonest course of conduct which was calculated to cause, and it was foreseeable that it would cause, and which did cause Plaintiff extreme mental distress.

29. The acts complained of were extreme and outrageous, exceeded the bounds of those usually tolerated in a civilized community and were not reasonably part of the Agreement between Plaintiff and Defendants.

30. Each of the acts complained of herein were done willfully, maliciously, and oppressively, and with the wrongful intention of injuring plaintiff, from an improper and evil motive amounting to malice and in conscious or reckless disregard of the Plaintiff's rights. Plaintiff is thus entitled to recover punitive damages from defendants in an amount according to proof.

In this case, Zumbrun complains that ALPA breached its duty of fair representation to him and that ALPA did so with the intent to cause him serious emotional distress. Both of these causes of action are grounded on allegations of intentional misconduct. Specifically, Zumbrun claims that ALPA breached its duty of fair representation to Zumbrun by: 1) conspiring with Delta to discharge him; 2) acting in bad faith and engaging in conduct deliberately designed to mislead Zumbrun and by acquiescing in Zumbrun's discharge as a concession to Delta. With respect to the count entitled *"Intentional* Infliction of Emotional Distress" (emphasis added), the complaint incorporates the allegations of intentional conduct from the previous paragraphs of the complaint and further alleges that ALPA engaged in "an intentional and dishonest course of conduct which was calculated to cause" and did cause Zumbrun mental distress. Further, Zumbrun charged that "[e]ach of the acts complained [of] herein were done willfully, maliciously, and oppressively, and with the wrongful intention of causing injury [Zumbrun], from an evil motive amounting to malice and in conscious or reckless disregard of [Zumbrun's] rights."

 ALPA argues that despite the fact that Zumbrun's complaint clearly and unambiguously states a claim for intentional infliction of emotional distress, the complaint also contains allegations that when read together could form the basis of a

claim for unintentional or negligent infliction of emotional distress. Specifically, ALPA relies on Zumbrun's allegations that: 1) ALPA owed him a duty of care not to create or impose any undue physical or mental stress on him; and 2) that ALPA breached that duty in reckless disregard of his rights to support its contention that his complaint triggered a duty to defend. As we stated earlier, however, we do not read Virginia law as requiring courts to scour the complaint to see if there are causes of action not specifically pled by the plaintiff. Under Virginia law, the court in deciding whether there is a duty to defend under an insurance policy looks at the causes of action actually asserted in the underlying complaint and compares them with the terms of the insurance contract. *See, e.g. Travelers Indem. Co.*, 245 S.E.2d at 249; *Town Crier*, 721 F.Supp. at 105. The court in *Town Crier*, applying Virginia law, specifically rejected the notion that mere "alleged acts" contained in a complaint, rather than claims actually set forth, can require an insurer to defend. *Town Crier*, 721 F.Supp. at 106.

Here, the allegations in Zumbrun's complaint that comprise his claim of intentional infliction of emotional distress accuse ALPA of engaging in "an intentional and dishonest course of conduct that was calculated to cause [Zumbrun] mental distress; that ALPA's actions were willful, malicious and oppressive and done with the wrongful intention of injuring Zumbrun; and that at the time that ALPA was engaging in this conspiracy with Delta that cost him his job, ALPA was acting with an improper and evil motive amounting to malice." The sum of these allegations, when read in conjunction with the specific cause of action pled by Zumbrun make it abundantly clear that Zumbrun was charging ALPA with engaging in intentional and malicious conduct designed to injure him and not the unintentional or negligent conduct which ALPA now argues might be covered under the insurance policy.

This interpretation of the complaint is also consistent with common sense and California law.[4] While California recognizes the tort of negligent infliction of emotional distress, a plaintiff bringing such a claim must "allege facts which indicate that they suffered *severe* emotional distress." *Bogard v. Employers Cas. Co.*, 164 Cal.App.3d 602, 210 Cal.Rptr. 578, 588 (1985). Zumbrun's complaint, however, does not allege any facts that could support a claim of severe emotional distress, a necessary element for a cause of action for negligent infliction of emotional distress. *See Bogard*, 210 Cal.Rptr. at 587–88. This provides further confirmation that the complaint filed by Zumbrun against ALPA and Delta never contemplated a cause of action for negligent infliction of emotional distress. *See Town Crier*, 721 F.Supp. at 104 (explaining that "causes of action give rise to relief ... only if all the elements of a claim are proved").

Accordingly, we hold that Zumbrun's complaint asserted no cause of action covered under the Twin City policy, and therefore, Twin City had no duty to defend ALPA in the *Zumbrun* litigation. Because we conclude that Twin City had no duty to defend ALPA in its suit against Zumbrun, we need not reach ALPA's second contention on appeal that it is entitled to the reasonable market value for the work of its in-house personnel.

*Affirmed.*

---

4. Zumbrun's lawsuit against ALPA and Delta was filed in California so California law governs whether his substantive claims have merit.