UNITED STATES FIRE INSURANCE COMPANY

V.

ASPEN BUILDING CORPORATION

Record No. 850315

April 22, 1988

Present: All the Justices

*C. Jay Robbins, IV,* for appellant.
*Michael Wayne Price* for appellee.

POFF, J., delivered the opinion of the Court.

We granted this appeal to consider whether an insurer had a duty under an "excess" general liability insurance policy to defend a motion for judgment filed against the insured when the "primary" insurer had provided such a defense. The trial court ruled that the excess insurer was obligated to defend because the *ad damnum* clause exceeded the primary coverage limits required by the excess policy.

Aspen Building Corporation (Aspen) constructed a residence acquired by George McCadden. The home and its contents were damaged by fire. Alleging that the fire resulted from a defect in the construction of a fireplace and chimney, McCadden filed a motion for judgment against Aspen seeking $175,000 in compensatory damages and $350,000 in punitive damages. In answers to interrogatories, McCadden claimed, *inter alia,* $94,045.49 for loss

of personal property. A jury awarded McCadden a verdict for $85,000, and the court entered judgment on the verdict.

Aspen was the named insured in two general liability insurance policies. One was a "primary" policy issued by Insurance Company of North America (INA). The other, an "excess" policy, was issued by United States Fire Insurance Company (USFIC). The USFIC policy covered losses in excess of $100,000 up to a maximum of $5,000,000. Specifically, USFIC promised "to pay on behalf of the insured the ultimate net loss in excess of the retained limit". Insofar as relevant here, the term "retained limit" was defined as "the applicable limits of the underlying policies listed in Schedule A". As a party to the excess contract, Aspen "warranted . . . that the underlying policies listed in Schedule A . . . shall be maintained in force during the currency of this policy". Schedule A required "underlying insurance" for "property damage" of "$100,000". Contrary to its warranty, Aspen had acquired a primary policy from INA providing underlying insurance of only $50,000.

INA employed Douglas B. Smith as lead counsel in the defense of McCadden's suit. John B. Dinsmore, Aspen's corporate counsel, participated in the trial in defense of Aspen's exposure in the $50,000 coverage "gap". When USFIC learned that McCadden's claim for personal property loss (the only part of the loss USFIC considered covered by its policy[1]) was less than $100,000, it declined to provide Aspen a defense.

After the $85,000 judgment was entered against it, Aspen filed an action against USFIC. Aspen contended that USFIC had breached its contractual duty to defend and demanded recovery of the attorney's fee Dinsmore had charged.[2] The trial court ruled that "an insurer who fails to defend is liable to the insured under the general policy to afford a defense where the . . . motion for judgment . . . alleges . . . [a loss] which if proven would bring the allegations within the scope of the policy coverage." Applying

---

[1] USFIC anticipated our decision in *Nationwide Mutual Ins. v. Wenger*, 222 Va. 263, 266, 278 S.E.2d 874, 875-76 (1981), construing coverage and exclusionary provisions of a general liability policy similar to those in USFIC's policy.

[2] As appears from an answer to a request for admissions, Aspen brought a separate suit against INA and its insurance agent seeking recovery of "that portion of judgment rendered against [Aspen] in excess of $50,000.00 and for attorney's fees."

that ruling, the court entered judgment for Aspen in the sum of $6,243.75, and we granted USFIC an appeal.

In several cases, we have applied the rule the trial court invoked. *See, e.g., Parker* v. *Hartford Fire Ins. Co.*, 222 Va. 33, 35, 278 S.E.2d 803, 804 (1981); *Lerner* v. *Safeco*, 219 Va. 101, 104, 245 S.E.2d 249, 251 (1978); *Travelers* v. *Obenshain*, 219 Va. 44, 46, 245 S.E.2d 247, 249 (1978); *London Guar. Co.* v. *White & Bros.*, 188 Va. 195, 199-200, 49 S.E.2d 254, 256 (1948). Significantly, the dispute in these cases questioned the duty of a primary liability insurer to defend a suit against its insured; we never before have been asked to determine the scope of an excess liability insurer's duty to defend its insured. Necessarily, any such determination entails a contract analysis.

■ In support of its argument on appeal, Aspen invokes the language in USFIC's policy which provides that the company shall "defend any suit against the insured . . . even if such suit is groundless, false or fraudulent". Aspen suggests that the reason USFIC declined to defend was because "apparently [it] determined that the suit for $175,000 in compensatory damages was groundless." Aspen neglects to quote the policy provision in full. USFIC covenants to defend only "[w]ith respect to any occurrence not covered, as warranted, by the underlying policies . . . but covered by the terms and conditions of this policy".

■ Because Aspen's exposure exceeded $50,000, the "occurrence" was "not covered, as warranted, by the underlying policies". And the occurrence, a negligent destruction of personal property, was of a *quality* "covered by the terms and conditions of [USFIC's] policy". However, as fixed by McCadden before trial, the *quantum* of the loss arising from that occurrence was less than $100,000. The occurrence, therefore, did not satisfy the terms and conditions of the coverage USFIC had contracted to provide.

■ In an alternative argument advanced on appeal, Aspen points out that, in one count of the motion for judgment, McCadden had claimed $350,000 in punitive damages. Aspen contended on brief that "this aspect alone would seem to demand defense of Aspen under [USFIC's] policy." We disagree. When the allegations of the motion for judgment "leave it in doubt whether the case alleged is covered by the policy, the refusal of the insurance company to defend is at its own risk". *London Guar. Co.*, 188 Va. at 199-200, 49 S.E.2d at 256. If the insurer resolves the doubt in its favor, it is liable for breach of its covenant to defend "if it

turns out on development of the facts that the case is covered by the policy". *Id.* at 200, 49 S.E.2d at 256.

This Court has deferred to the legislature the question whether public policy prohibits a person from insuring himself against liability for punitive damages. *Lerner*, 219 Va. at 103, 245 S.E.2d at 251. The General Assembly, apparently reacting to *Lerner*, enacted a statute, Acts 1983, c. 353, providing that "[i]t is not against the public policy of the Commonwealth for any person to purchase insurance providing coverage for punitive damages arising out of the death or injury of any person as the result of negligence, including willful and wanton negligence, but excluding intentional acts." Former Code § 38.1-42.2 (now, Code § 38.2-227). The statute, however, did not extend to awards of punitive damages in property damage cases.

Consequently, the question whether USFIC's policy covered McCadden's claim against Aspen for punitive damages was in doubt. Because the "development of the facts" in McCadden's trial failed to prove "the [punitive-damages] case alleged", USFIC is not liable for its refusal to defend.

Finding that USFIC's contractual commitment to provide a supplemental defense was no broader than its qualitative and quantitative coverage commitment, we will reverse the judgment and enter final judgment for USFIC.

*Reversed and final judgment.*