**LIBERTY MUTUAL INSURANCE COMPANY, et al., Appellees**

v.

**TRAVELERS INDEMNITY COMPANY, Appellant.**

No. 95–7039.

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 11, 1995.

Decided March 8, 1996.

Sidney G. Leech, Baltimore, MD, argued the cause and filed the briefs for appellant.

Denise R. Stanley, Baltimore, MD, with whom D'Ana E. Johnson, Washington, DC, was on the brief, argued the cause for appellees Liberty Mutual Insurance Company and the First Church of Christ, Scientist.

Samuel J. Smith, Jr. and William J. Carter, Washington, DC, were on the brief for appellee Smithy Braedon Property Company.

Before: EDWARDS, Chief Judge, BUCKLEY and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge WILLIAMS.

**STEPHEN F. WILLIAMS, Circuit Judge:**

If parties to a property management contract agree to take out insurance policies that name each other as additional insureds, and one party takes out a policy substantially inferior to what the contract requires, does that party's breach of the property management contract defeat its claim against the other's insurer as a named additional insured under that policy? To put it more generally, is a third-party beneficiary's breach of its contract with the promisee a defense to the third-party beneficiary's claim against the promisor? The law generally says that it is not a defense, and we see no reason to think Massachusetts, whose law we must apply, would decide differently. Accordingly we reverse the decision of the district court, which rested on a contrary assumption.

\* \* \*

Smithy Braedon, a property management firm, agreed to take care of some property of First Church of Christ, Scientist in Washington, D.C. As part of the contract, each agreed to take out liability insurance (with some variations between the two), and to name the other as an additional insured. First Church carried out its end of the bargain, obtaining a policy with Liberty Mutual that is apparently in full compliance with the property management contract. Smithy Braedon did not. It obtained a policy with Travelers that fell short of its contractual obligation in a number of ways. The limits were lower than required by contract; the clause naming First Church as an additional insured limited its rights to liability arising out of the operations of Smithy Braedon; and, most important, the policy declared the insurance to be "excess over any other valid and collectible insurance available to you [Smithy Braedon and additional insureds]." Smithy Braedon sent First Church a Certificate of Insurance that revealed the lower policy limits but not the clause declaring the coverage to be "excess" only.

In January 1992 LaDwayna Thomas sued First Church and Smithy Braedon's subcontractor (and by a later amendment Smithy Braedon itself), alleging a back injury suffered when she fell backward after pulling on a broken door handle on First Church's property, and seeking $1,000,000 in damages—just within the $1,000,000 per occurrence limit in each policy. Liberty defended First Church in the action but apparently refused to defend Smithy Braedon, despite demands that it do so. Travelers therefore provided Smithy Braedon with a defense, incurring attorneys' fees and other costs.

After the filing of the Thomas lawsuit, First Church and Liberty Mutual filed this action in the district court for declaratory relief against Smithy Braedon and Travelers. They sought a declaration that First Church was entitled to defense, liability coverage, and indemnity from Smithy Braedon or Travelers; that Liberty Mutual was not obligated to provide a defense, liability coverage, or indemnity to Smithy Braedon; and that First Church and Liberty Mutual were entitled to reimbursement and compensation for expenses incurred and payments made in connection with the Thomas lawsuit. Travelers filed a counterclaim seeking a declaration that it had no obligation to defend Smithy Braedon or First Church, or to indemnify them, unless a settlement or judgment exceeded the limits under the Liberty policy; that Liberty Mutual was obligated to defend and indemnify Smithy Braedon in the Thomas lawsuit; and that Travelers was entitled to reimbursement for expenses incurred and payments made in connection with the Thomas lawsuit. The parties filed cross motions for summary judgment.

The district court entered judgment in favor of First Church and Liberty Mutual, saying:

(1) defendant Smithy Braedon is declared to have breached the Property Management Contract by failing to obtain the required insurance; (2) Smithy Braedon is still under a duty to indemnify First Church consistent with the Property Management Contract; (3) neither side must provide a defense for the other; and (4) defendant Travelers Insurance is not entitled to compensation for the defense provided to Smithy Braedon to date.

*Liberty Mut. Ins. Co. et al. v. Travelers Ins. Co. et al.,* Civ. No. 92–2235, Mem. Op. at 10 (D.D.C. Oct. 27, 1994). The parties under-

stand the opinion to find (and we agree) that because Smithy Braedon had breached its management contract with First Church, it could not look to First Church's Liberty policy for coverage. This finding was fatal to Travelers' claim. Because on this view Smithy Braedon had no other insurance that was "valid and collectible," the excess endorsement of the Travelers policy did not apply, and Travelers' coverage was primary. Mem. Op. at 6, 8. Travelers, but not Smithy Braedon, appealed.

While this appeal was pending, the Thomas lawsuit settled, with defendants agreeing to pay Thomas $105,000 plus attorneys' fees of $600. There was no adjudication or concession of negligence.

\* \* \*

■ As we have seen, the district court's decision turned on the idea that Smithy Braedon's breach of its property management contract, by failing to secure fully complying insurance, deprived it of what otherwise would have been its rights as an additional insured under First Church's policy with Liberty Mutual. From that it followed that Smithy Braedon had no "valid and collectible" primary insurance and that the "excess" insurance clause in its policy was ineffective. Liberty Mutual and First Church make a threshold argument that because Smithy Braedon failed to appeal, Travelers cannot attack the first, critical step in this analysis—the decision absolving Liberty of its duty to Smithy Braedon as an additional insured. This is clearly not the case. A party has standing to appeal "if the appellant can show an adverse effect of the judgment," 15A C. Wright, A. Miller, & E. Cooper, *Federal Practice and Procedure* § 3902, at 63 (1992), so that, for example, a party who is secondarily liable may appeal a judgment even if the party primarily liable has not, *United States ex rel. Celanese Coatings Co. v. Gullard,* 504 F.2d 466, 469 (9th Cir.1974). Because the decision against Smithy Braedon and in favor of Liberty was pivotal in the defeat of Travelers' claim, it was clearly injured by that aspect of the judgment.

■ A second preliminary issue is what law applies to the various contracts. A federal court sitting in diversity jurisdiction applies the choice of law rules of the forum state (or district or territory), *Klaxon Co. v. Stentor Elect. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), in this case the District of Columbia. Under District law, insurance contracts are governed by the substantive law of the state in which the policy is delivered. *Levin v. John Hancock Mut. Life Ins. Co.,* 41 A.2d 841, 843 (D.C.App.1945); see also *Raley v. Life & Casualty Ins. Co. of Tennessee,* 117 A.2d 110, 111 (D.C.App.1955) (citing *Levin).* The Liberty Mutual policy was delivered in Massachusetts, the Travelers policy in Virginia. We therefore apply the law of those states to the respective policies.

■ Apart from whatever defenses Liberty may have against Smithy Braedon, it is not disputed that Smithy Braedon qualifies as an additional insured under the policy that Liberty issued to First Church. As such, it has the same rights to a defense and indemnity as First Church (but no more). *Massachusetts Turnpike Auth. v. Perini Corp.,* 349 Mass. 448, 208 N.E.2d 807, 813 (1965) ("The naming of additional insureds does not extend the nature of the substantive coverage originally given by the policy but merely gives to other persons the same protection afforded to the principal insured."). So long as Smithy Braedon's insurance under the Liberty policy was "valid and collectible," its insurance under the Travelers policy was excess only. Appellees point us to some standard examples of insurance that is not "valid and collectible," namely "invalid or illegal insurance, such as insurance which is voidable for misrepresentation, and uncollectible insurance, such as insurance of an insolvent company." 16 *Couch on Insurance 2d* § 62:117, at 592 (1983). Neither of these situations—misrepresentation or insolvency—nor anything of their ilk is present regarding the Liberty policy. Even if Smithy Braedon's post-contract Certificate of Insurance qualifies as a misrepresentation to First Church, there is no suggestion that anyone misrepresented anything to Liberty. And Liberty has not said that it knew about or relied on the insurance provisions in the property management contract or Smithy Braedon's Certificate of Insurance.

This takes us, then, to the contention that because of Smithy Braedon's breach of the property management contract, Liberty has a defense against Smithy Braedon's otherwise legitimate claims against Liberty as a third-party beneficiary of Liberty's insurance contract with First Church. (The district court and the parties have not used the third-party beneficiary concept, but that appears to be the applicable category.) Neither Massachusetts, the most relevant jurisdiction, nor Virginia appears to have law directly on point. Massachusetts has commonly followed the Restatement (Second) of Contracts (1981) respecting third-party beneficiary law, see *Rae v. Air–Speed, Inc.*, 435 N.E.2d 628, 632 (Mass.1982) (defining third-party beneficiary according to Restatement (Second) § 302); *Flattery v. Gregory*, 397 Mass. 143, 489 N.E.2d 1257, 1260 (1986) (extending adoption of Restatement (Second) § 302 to related provisions); *Demoulas v. Demoulas Super Markets, Inc.*, 1995 WL 476772 (Civ. A. No. 90–2927(B)), at 98 n. 40 (Mass.Super.Ct. Aug. 2, 1995) (applying § 309(2), relating to defenses against a third-party beneficiary), so we look largely to it to estimate how to fill the relevant gaps. It seems clear that Smithy Braedon is a third-party beneficiary of the Liberty policy. The Restatement finds that relationship when "recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties" and "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Restatement (Second) § 302(1) & (1)(b). Those conditions are clearly met here. Further, classification of an additional insured as a third-party beneficiary appears inherent in the Massachusetts understanding that an additional insured has the same remedies against the insurer as the insured. See *Massachusetts Turnpike Auth., supra.*

The Restatement (Second) of Contracts deals with the specific issue of defenses of the promisor against the third-party beneficiary in § 309, which reads:

§ 309. Defenses against the beneficiary

(1) A promise creates no duty to a beneficiary unless a contract is formed between the promisor and the promisee; and if a contract is voidable or unenforceable at the time of its formation the right of any beneficiary is subject to the infirmity.

(2) If a contract ceases to be binding in whole or in part because of impracticability, public policy, non-occurrence of a condition, or present or prospective failure of performance, the right of any beneficiary is to that extent discharged or modified.

(3) Except as stated in Subsections (1) and (2) and in § 311 or as provided by the contract, the right of any beneficiary against the promisor is not subject to the promisor's claims or defenses against the promisee *or to the promisee's claims or defenses against the beneficiary.*

(4) A beneficiary's right against the promisor is subject to any claim or defense arising from his own conduct or agreement.

Restatement (Second) § 309 (emphasis added). Subsection (3) purports to govern except when subsection (1) or (2), or § 311 (relating to discharge or modification of the promisor's duty), is applicable, and none of them is. Subsection (3) says that the beneficiary's rights against the promisor are not subject to "the promisee's claims or defenses against the beneficiary." The comments address the issue of claims by the promisee against the beneficiary arising out of a separate transaction, as here:

[T]he beneficiary's right is direct, not merely derivative, and claims and defenses of the promisor against the promisee *arising out of separate transactions* do not affect the right of the beneficiary except in accordance with the terms of the contract. *Similarly*, the beneficiary's right against the promisor is not subject to the claims and defenses of the promisee against the beneficiary unless the contract so provides.

*Id.* § 309 cmt. c (emphasis added).

Other sources also point to the conclusion that Smithy Braedon's transactions with First Church do not affect Liberty's duties to Smithy Braedon. Williston agrees with the Restatement's approach and grounds his conclusion in the proposition that the unavailability of such defenses turns on "the true meaning in fact of the promise rather than

on any rule of law." 2 Samuel Williston, *A Treatise on the Law of Contracts* § 399 (2d ed. 1936) (unchanged, 3d ed. 1959) (citations omitted). Thus, "If the promise *means* that the promisor agrees to pay a sum of money to A, to whom the promisee says he is indebted, it is immaterial whether the promisee is actually indebted in that amount or at all." *Id.* (emphasis added). We followed this approach, quoting Williston, in *Rouse v. United States*, 215 F.2d 872, 874 (D.C.Cir. 1954) (applying D.C. law); see also *Peters Grazing Ass'n. v. Legerski*, 544 P.2d 449, 458 (Wyo.1975) ("A breach of another contract not between the same parties is not a defense.") (citing *Rouse*); *International Brotherhood of Elec. Workers v. Dave's Elec. Serv., Inc.*, 382 F.Supp. 427, 430 (M.D.Fla.1974) ("The key to determining which defenses may be available against the beneficiary is the relationship among the parties as initially defined in the contract itself."); 3 E. Allan Farnsworth, *Farnsworth on Contracts* § 10.9, at 53 (1990) (calling *Rouse* "a noted case" and citing it for general rule); 4 *Corbin on Contracts* § 821, at 281 (1951) (unchanged in 1994 Supplement) ("There is nothing to prevent a promisor from undertaking a larger duty than the duty owed by the promisee to the beneficiary."); *Nu–Way Plumbing, Inc. v. Superior Mechanical, Inc.*, 315 So.2d 556, 557 (Fla.App.1975) (quoting Corbin, applying same rule stated in Williston).

Here, Liberty points to nothing in its policy even remotely suggesting that its promises to Smithy Braedon as additional insured are contingent on Smithy Braedon's being free of misbehavior toward First Church. Indeed, as Liberty received a premium that presumably encompassed any incremental costs due to the presence of an additional insured, it would be pure windfall for it to be able to defend on the basis of Smithy Braedon's breach to First Church. (At least it would be a windfall unless Liberty in some way relied on the insurance provisions of the property management contract or on the Certificate of Insurance, which it has not even hinted.) Thus, quite apart from Massachusetts's stated adherence to the "plain meaning" rule for interpretation of insurance contracts, see, e.g., *Reliance Ins. Co. v. Aetna Casualty & Surety Co.*, 393 Mass. 48, 468 N.E.2d 621, 624 (1984), we can see no reason for importing complications from Smithy Braedon's relationship to First Church into resolution of Liberty's duties to Smithy Braedon.

There remains the possibility that Restatement § 309(4) might alter this conclusion. It says: "A beneficiary's right against the promisor is subject to any claim or defense arising from his own conduct or agreement." It is unclear what the word "conduct" in § 309(4) might add to the meaning of § 309(3), since presumably the beneficiary's conduct would be irrelevant unless it related to an express or implied condition of the contract between the promisor and promisee. The comments and illustrations to § 309 do not clarify the sentence, and the single application uncovered by a search of federal and state cases is in full accord with Williston's view that one must look to the contract between promisor and promisee to see what conditions *it* establishes. In *Sisters of St. Joseph of Peace, Health, & Hosp. Servs. v. Russell*, 318 Or. 370, 867 P.2d 1377, 1382–83 (1994), a hospital sued an insurance company as a third-party beneficiary of the insurance company's settlement agreement with a patient. The insurance company asserted, as a defense under § 309(4), the hospital's failure to adduce evidence that the medical services provided were necessary. Looking solely to the settlement agreement, the court found no grounds for implying such a condition. *Id.* at 1383. For the reasons already given, we can see none here.

Liberty mistakenly relies on *Borough of Wilkinsburg v. Trumbull–Denton Joint Venture*, 390 Pa.Super. 580, 568 A.2d 1325, 1326–27 (1990), for support of its view. There a general contractor arranged with a subcontractor (the borough) for certain services, and agreed to take out an insurance policy naming the borough as an additional insured. The contractor took out the policy, but failed to name the borough as an insured. Needless to say, an accident occurred. After the borough's general insurance company paid for the borough's defense and settlement, the borough sued both the contractor and the contractor's insurer for those expenses. Judgment was entered in favor of the con-

tractor's insurance company (and that judgment was not appealed), *id.* at 1326 n. 1; i.e., the insurer's duties were *not* affected by the insured's breach of its contract with the borough. The court upheld the award of the full expenses (settlement plus defense) against the general contractor, saying that "the fortuitous circumstance of additional insurance cannot, in good conscience, permit appellant [the contractor] to avoid its duties under its contract." *Id.* at 1327. In other words, *Borough of Wilkinsburg* is a simple suit by promisee against promisor, with no third-party beneficiary issue, and the promisor was unsurprisingly found liable for its breach. It would be relevant to First Church's claims against Smithy Braedon, but not to Travelers' claims against Liberty.

■ There remains the issue of Travelers' entitlement to reimbursement by Liberty for the costs of defending Smithy Braedon in the Thomas lawsuit. As an excess insurer has no duty to defend where the alleged loss does not exceed the coverage of the primary policy, *United States Fire Ins. Co. v. Aspen Bldg. Corp.*, 235 Va. 263, 367 S.E.2d 478, 479 (1988); see also Allan D. Windt, *Insurance Claims and Disputes* § 4.11 at 157–58 (2d ed. 1988), Travelers had no duty to defend. Liberty clearly had such a duty. Windt says most jurisdictions hold that an excess insurer who defends is entitled to reimbursement from a primary insurer who had a duty to defend, but that some courts have held to the contrary. Windt, *supra* § 10.14 at 557–58 & nn. 129–130 (not listing Virginia or Massachusetts in either category). Nevertheless, the treatise argues that "[p]resumably," even the latter courts "would allow subrogation or indemnity if the excess insurer, without being a volunteer ..., defended in the absence of a claim against the insured in excess of the primary policy's limits." *Id.* at 558 n. 130. Given Liberty's position that it had no duty to defend, and the risk that Liberty's view might prevail (as in fact it did in the district court), Travelers can hardly be classified as a volunteer. See *id.* § 10.10. Liberty must therefore reimburse Travelers for expenditures connected with defending Smithy Braedon. As was true of the third-party

beneficiary issue, any other result would give Liberty an undeserved windfall.

\* \* \*

The judgment of the district court is reversed and the case remanded for further proceedings consistent with this opinion.

*So ordered.*