## CIRCUIT COURT OF THE CITY OF RICHMOND

City of Roanoke

v.

Commonwealth of Virginia,
Department of the Treasury, et al.

July 3, 2002

Case No. LM-2856-4

BY JUDGE RANDALL G. JOHNSON

This is a dispute between the City of Roanoke ("City") and the Virginia Department of the Treasury's Division of Risk Management ("Risk Management"). At issue is whether the "Other Coverage" provision of an insurance policy purchased by the City from Risk Management precludes coverage of a claim made against the City. The case is before the court on the City's motion for partial summary judgment. Oral argument was held on June 24.

The relevant facts are not in dispute. Pursuant to Va. Code §§ 2.2-1832 et seq., the Division of Risk Management is the arm of the Commonwealth that is responsible for the establishment, procurement, and maintenance, through self-insurance or otherwise, of insurance coverage for the state. It also sells insurance coverage to political subdivisions of the state. In 1993, the City of Roanoke purchased from Risk Management $1,000,000 of liability insurance under what is known as the VaRisk 2 plan. The coverage is subject to a "self-insured retention" amount, which is the same as a deductible, of $25,000. The policy was renewed annually and was in full force and effect at the time of the events leading to this lawsuit. Among the conditions contained in the policy is "Condition D — Other Coverage." That condition is as follows:

This PLAN is written to reflect the intent of all parties that, if at the time of loss, there is any other insurance available to the covered party which covers such loss, or which could have covered such loss except for the existence of this contract, VaRISK 2 shall not be liable for any amount other than the excess over any other valid or collectible insurance applicable to a loss hereunder. Other valid or collectible insurance includes, but is not limited to, policies of insurance or programs of self-insurance purchased or established by or on behalf of the Covered Party to insure against liability arising from the activities of the Covered Party, regardless of whether or not the policy or program provides primary, excess, excess over excess, umbrella, or contingent coverage. Provided however, this condition shall not apply if VaRISK 2 is designated as providing the underlying coverage for any umbrella coverage purchased by a MEMBER AGENCY.

On July 1, 1997, the City purchased a policy of liability insurance from States Self-Insurers Risk Retention Group, Inc. ("States") in the amount of $6,000,000. The States policy was subject to a self-insured retention provision, or deductible, of $1,000,000, the amount of the VaRisk 2 policy.

On April 30, 1998, the City received a notice of claim for damage to property owned by Donald and Colleen Huffman. Appropriate notice of the claim was given by the City to Risk Management. On January 29, 1999, the Huffmans filed suit against the City in the Circuit Court of the City of Roanoke seeking damages in the amount of $152,000. On July 16, 1999, Risk Management denied coverage under the VaRisk 2 policy. The denial was based on the Other Coverage provision of the policy, Risk Management taking the position that the existence of the States policy precluded coverage under the VaRisk 2 policy. Risk Management refused to provide a defense to the City or to participate in the litigation in any way. The City subsequently settled the Huffmans' claim for $105,000. It then filed this action seeking indemnification of the settlement amount and damages for breach of contract.

In its motion for partial summary judgment, the City argues that the Other Coverage provision in the VaRisk 2 policy is clear and unambiguous and requires a ruling that the VaRisk 2 policy covers the Huffmans' claim. It cites the case of *United States Fire Ins. v. Aspen Bldg. Corp.*, 235 Va. 263, 367 S.E.2d 478 (1988), to argue that while Huffmans' claim was qualitatively covered by the States policy, the claim was not quantitatively covered by it. Thus, according to the City, the States policy is not "other valid or collectible insurance" as defined in the Other Coverage provision.

Risk Management argues that the qualitative-quantitative analysis of Aspen does not apply. Instead, it says the language of the Other Coverage provision clearly excludes the Huffmans' claim from coverage. The court rejects Risk Management's argument and will enter partial summary judgment for the City.

Because the court agrees with the City that Aspen is controlling, its facts will be set out almost exactly as they were by the Supreme Court. Aspen Building Corporation constructed a residence subsequently acquired by George McCadden. The home and its contents were damaged by fire. Alleging that the fire resulted from a defect in the construction of a fireplace and chimney, McCadden filed a motion for judgment against Aspen seeking $175,000 in compensatory damages.[1] In answers to interrogatories, McCadden claimed, *inter alia*, $94,045.49 for loss of personal property. A jury awarded McCadden a verdict for $85,000, and the trial court entered judgment on the verdict.

Aspen was the named insured in two general liability insurance policies. One was a "primary" policy issued by Insurance Company of North America (INA). The other, an "excess" policy, was issued by United States Fire Insurance Company (USFIC). The USFIC policy covered losses in excess of $100,000 up to a maximum of $5,000,000. Specifically, USFIC promised "to pay on behalf of the insured the ultimate net loss in excess of the retained limit." The term "retained limit" was defined as "the applicable limits of the underlying policies listed in Schedule A." As a party to the excess contract, Aspen "warranted . . . that the underlying policies listed in Schedule A shall be maintained in force during the currency of this policy." Schedule A required "underlying insurance" for "property damage" of "$100,000." Contrary to its warranty, Aspen had acquired a primary policy from INA providing underlying insurance of only $50,000.

INA employed Douglas B. Smith as lead counsel in the defense of McCadden's suit. John B. Dinsmore, Aspen's corporate counsel, participated in the trial in defense of Aspen's exposure in the $50,000 coverage "gap." When USFIC learned that McCadden's claim for personal property loss (the only part of the loss USFIC considered covered by its policy) was less than $100,000, it declined to provide Aspen a defense.

---

[1] McCadden also sought $350,000 in punitive damages, but that claim, and the Supreme Court's analysis of it, involved legal principles not relevant to the motion now under consideration.

After the $85,000 judgment was entered against it, Aspen filed an action against USFIC. Aspen contended that USFIC had breached its contractual duty to defend and demanded recovery of the attorney's fee Dinsmore had charged. The trial court ruled that "an insurer who fails to defend is liable to the insured under the general policy to afford a defense where the . . . motion for judgment . . . alleges . . . [a loss] which if proven would bring the allegations within the scope of the policy coverage." Applying that ruling, the court entered judgment for Aspen in the sum of $6,243.75.

On appeal, the Supreme Court first said that the rule invoked by the trial court had, in fact, been applied by the Supreme Court in several cases. The court went on to hold, however, that McCadden's claim did not fall within the coverage of the USFIC policy. After pointing out that the USFIC policy required it to defend only "[w]ith respect to any occurrence not covered, as warranted, by the underlying policies . . . but covered by the terms and conditions of this policy," the Court said:

> Because Aspen's exposure exceeded $50,000, the "occurrence" was "not covered, as warranted, by the underlying policies." And the occurrence, a negligent destruction of personal property, was of a *quality* "covered by the terms and conditions of [USFIC's] policy." However, as fixed by McCadden before trial, the *quantum* of the loss arising from that occurrence was less than $100,000. The occurrence, therefore, did not satisfy the terms and conditions of the coverage USFIC had contracted to provide.

235 Va. at 266 (emphasis in original).[2]

The judgment was reversed and final judgment was entered for USFIC. That holding is applicable here.

For purposes of the City's motion, there is no material difference between the coverage provision in Aspen and the coverage provision in the case at bar. In Aspen, USFIC promised to pay all claims in excess of "the applicable limits of the underlying policies listed in Schedule A." Here, Risk Management promised to pay all claims in excess of "any other insurance available to the Covered Party which covers such loss, or which could have covered such loss except for the existence of this contract." In each case, the

---

[2] "As fixed by McCadden before trial" undoubtedly refers to his interrogatory answers alleging personal property damages of $94,045.49, which was less than the $100,000 threshold of USFIC's coverage.

relevant question is one of coverage. And in each case, the loss was of the quality covered, but was not of the quantum covered.

In its opposition to the City's motion for partial summary judgment, Risk Management quotes the portion of the Aspen facts dealing with Aspen's promise to pay the excess over "underlying policies" and "underlying coverage" and says "[i]n the case at bar, there is no such language in the States Policy for this court to analyze regarding underlying coverage, if any, and, therefore, the Aspen case does not apply."[3] Risk Management also says that there are "a multitude of attendant, pertinent facts [which] are missing from the case at bar." Risk Management fails to state, however, why the language contained in the USFIC policy in *Aspen* is materially different from the language in the VaRisk 2 policy here, or what material facts in *Aspen* are not present here. In sum, Risk Management has failed to show why the qualitative-quantitative analysis of *Aspen* is not applicable to the case-at-bar or why *Aspen's* holding is not binding in this action.

Virginia Supreme Court Rule 3:18 allows a court to grant summary judgment if there are no materials facts genuinely in dispute. For the reasons set out above, the City is entitled to summary judgment on so much of its claim as alleges that the Huffmans' claim is covered by the VaRisk 2 policy.

---

[3] The court assumes that the reference to the States policy should be to the VaRisk 2 policy.