# CIRCUIT COURT OF FAIRFAX COUNTY

RRR, L.L.C.

v.

New Hampshire
Insurance Co.

October 17, 2007

Case No. (Law) 2005-1762

BY JUDGE STANLEY P. KLEIN

This matter is before the court upon Plaintiff, RRR, L.L.C., t/a Rosenthal Nissan/Mazda's ("RRR" or "Rosenthal") Motion for Summary Judgment and the cross Motion for Judgment as a Matter of Law by Defendant, New Hampshire Insurance Company ("NHI"). This case involves a coverage and duty-to-defend dispute between RRR, a motor vehicle dealership, and NHI, its insurer. More specifically, having been sued in this court by a former customer, RRR tendered its defense to NHI, which denied coverage and declined to defend. The underlying case settled, and RRR now seeks to recover defense and settlement costs from NHI. Counsel have advised the court that it need only decide the issue of NHI's alleged liability, as the parties have agreed upon the quantum of damages if the court were to find that NHI had the duty to defend. The parties further agreed that all relevant facts were set out in the Parties' Joint Stipulations ("PJS"), which the court should consider in ruling on their cross-motions.

The Court has fully considered the PJS, the relevant provisions of the applicable policy of insurance, the briefs of the parties, and the arguments of counsel. For the reasons set out below, RRR's Motion for Summary Judgment is denied, and judgment is entered for NHI.

## I. *Background*

### A. *The Underlying Lawsuit*

Jessica Kittrell, a former customer of RRR, filed a three count motion for judgment (the "Kittrell Suit" or "KMFJ") against RRR setting forth claims arising out of her lease of a vehicle from Rosenthal. PJS ¶ 3. In her suit, Kittrell alleged (1) that she arrived at Rosenthal with the intent to buy but was convinced by Rosenthal's representatives that she would get a better deal if she leased the vehicle, KMFJ ¶ 5; (2) that Rosenthal's representatives made numerous representations to her regarding a security deposit and monthly leasing costs; (3) that after she had signed an initial lease agreement, Rosenthal personnel manipulated various figures related to the calculation of monthly costs and then advised her she would have to pay more than originally agreed in that lease; (4) that Rosenthal threatened not to pay off her trade-in (and thus, damage her credit) if she did not sign a new lease agreement incorporating the new costs; and (5) that figures in the new lease agreement were entirely incorrect, causing her further financial damage. KMFJ ¶¶ 6-22. Kittrell also alleged that, when the leasing company that purchased the lease from Rosenthal pointed out the inconsistencies in the lease documents, Rosenthal provided additional false information regarding an upgrade from cloth seats to leather seats to account for the discrepancy. KMFJ ¶¶ 23-26.

Count I of the Kittrell Suit claimed violations of the Virginia Consumer Protection Act, Va. Code §§ 59.1 *et seq.* ("VCPA"), and alleged that Rosenthal willfully violated Va. Code § 59.1-200(A)(14), which makes unlawful "any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Kittrell accused Rosenthal of "using multiple acts of deception, fraud, false pretense, false promise, and misrepresentation in connection with a consumer transaction," KMFJ ¶ 33, "falsely informing [her] more than three weeks after she took possession of the vehicle that she needed to execute a second [lease] on less favorable terms to [her] after Rosenthal had accepted and signed the first [lease]," KMFJ ¶ 34, and "deceptively and fraudulently increasing the gross capitalized cost [on her lease] in order to make more money off the deal. . . ." KMFJ ¶ 37.

Kittrell asserted that "Rosenthal's conduct was willful and that willfulness can be inferred from the facts and circumstances surrounding this transaction as well as from the other transactions in which Rosenthal engaged

in similar deceptive practices involving leases." KMFJ ¶ 40. Specifically, she claimed that Rosenthal had engaged in similar deceptive practices on other occasions, KMFJ ¶ 35, "ha[d] previously engaged in the practice of 'packing' undisclosed amounts into the gross capitalized cost . . . [and] ha[d] a well-documented history of willfully using deceptive practices to cheat and defraud consumers in automobile lease transactions." KMFJ ¶ 38.

In Count II of her suit, Kittrell claimed that Rosenthal had breached its contract with her solely because Rosenthal had required her to enter into the less favorable second motor vehicle lease agreement with it. In Count II, Kittrell incorporated all of the allegations of fraudulent conduct by Rosenthal that were set out in the preceding paragraphs of the Kittrell Suit.

Finally, in Count III, Kittrell alleged that Rosenthal's representatives "committed fraud in connection with the consumer transaction described herein . . . made false statements and representations . . . and fraudulently concealed true facts, solely to fraudulently induce the Plaintiff to enter into the second Motor Vehicle Lease Agreement." KMFJ ¶ 48. In this count, Kittrell claimed that "the entire transaction [was] riddled with fraud, KMFJ ¶ 49, and that the "false statements, misrepresentations, and fraudulent actions taken by Rosenthal were intended to deceive and defraud the Plaintiff. . . ." KMFJ ¶ 50.

## B. *The Relevant Policy Provisions*

NHI issued a policy of insurance to RRR indemnifying RRR for claims falling within the ambit of the policy's provisions. The pertinent portions of that insurance policy are found in two "Extension Endorsements," which read in relevant part as follows:

### SECTION XII: AUTOMOBILE DEALERS LEGAL DEFENSE AND PRODUCT RELATED DAMAGES COVERAGE

"Product Related Damage" means damages incurred by any customer and *arising out of the sale, service, or repair* of your products other than damages as a direct result of an accident.

A. We will pay all sums the "insured" legally must pay as damages because of *"product related damage"* to which this insurance applies. . . .

D. *Exclusions*: This insurance does not apply to:
1. Damages if caused by *any willful, dishonest, fraudulent, intentional, or criminal act* committed by any "insured."

Garage Policy Extension Endorsement, PJS ¶ 2, Exhibits A and B (emphasis added).

SECTION XIII: TRUTH IN LENDING ERRORS AND OMISSIONS LIABILITY COVERAGE FOR AUTOMOBILE PURCHASE OR LEASING. . . .

A. We will also pay all sums the "insured" must legally pay as damages because of the *unintentional* violation of any Federal or State Consumer Credit Act, including but not limited to the Truth in Lending Act, or similar other statute, law, or ordinance, and which arises out of representations made *pertaining to the lending of amounts* for the purposes of purchasing or *leasing* of any automobiles.
B. *Exclusions . . . . Any willful or knowing violation* of any Federal or State Consumer Credit Act or similar statute, law, or ordinance committed by you or at your discretion.

*Id.*

RRR claims that some acts alleged in the Kittrell Suit fell within its policy coverage and, thus, NHI had the duty to defend RRR in that lawsuit. RRR Motion for Summary Judgment, ¶¶ 8, 9. In particular, RRR asserts: (1) that the Kittrell Suit arose out of RRR's sale and service of a vehicle, thereby implicating coverage under Section XII of the policy; (2) that the allegations relating to the manipulation of the lease's Gross Capitalized Cost stated a violation of the Consumer Leasing Act ("CLA"), thus triggering coverage under Section XIII of the policy;[1] and (3) that the willfulness exclusions in both policy sections do not preclude coverage of the claims set out in the Kittrell Suit.

NHI responds that no possible coverage of claims raised in the Kittrell Suit existed under its policy with RRR and, therefore, it did not breach any duty it owed to RRR. NHI contends (1) that there was no sale, service, or

---

[1] Pl's Brief in Support of its Motion for Summary Judgment, p. 3.

repair of a vehicle prompting coverage under Section XII; (2) that no CLA claim existed to trigger coverage under Section XIII; and (3) that all of the acts in the Kittrell Suit were allegedly committed willfully, and, as a result, the exclusions in both policy sections govern because the intentional nature of RRR's conduct, not the required elements of a VCPA claim, determine the applicability of the policy exclusions.

## II. *Analysis*

Insurance policies are contracts. Hence, "[c]ourts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the contracts." *Floyd v. Northern Neck Ins. Co.*, 245 Va. 153, 158, 427 S.E.2d 193, 196 (1993). As the policy was drafted by the insurer, fundamental principles of contract interpretation require that any ambiguities or doubts concerning the intent of the parties be resolved against the insurer. *Salzi v. Virginia Farm Bureau Mut. Ins.*, 263 Va. 52, 55, 556 S.E.2d 758, 760 (2002); *Johnson v. Insurance Co. of North Am.*, 232 Va. 340, 344-45, 350 S.E.2d 616, 619 (1986); *Saint Paul Fire & Marine Ins. Co. v. S. L. Nusbaum & Co.*, 227 Va. 407, 411, 316 S.E.2d 734, 736 (1984). However, the law is equally clear that a court is not thereby authorized to rewrite the policy of insurance, nor to adopt a construction of the policy inconsistent with the language utilized by the parties. *Ocean Accident Corp. v. Washington Brick & Terra Cotta Co.*, 148 Va. 829, 844, 139 S.E. 513 (1927).

Although the Supreme Court of Virginia has not yet articulated a specific test to be utilized when determining whether an insurer has a duty to defend claims brought against its insured, various federal and state trial courts in Virginia have adopted the so called "eight corners rule" which requires review of "(1) the policy language to ascertain the terms of the coverage and (2) the underlying complaint to determine whether any claims alleged therein are covered by the policy." *American Online, Inc. v. Saint Paul Mercury Ins. Co.*, 207 F. Supp. 2d 459, 465-66 (E.D. Va. 2002) (citations omitted); *Town Crier, Inc. v. Hume*, 721 F. Supp. 99, 102, n. 12 (E.D. Va. 1986) ("an insured's duty to defend is determined solely by the allegations in the pleadings"); *American & Foreign Ins. Co. v. Church Schs. in the Diocese of Virginia*, 645 F. Supp. 628, 631, n. 1 (E.D. Va. 1986) (declining to consider facts outside of those alleged); *Erie Ins. Exch. v. State Farm Mut. Auto. Ins. Co.*, 60 Va. Cir. 418 (Warren Co. 2002) (adopting "eight concerns rule").

This "eight corners rule" has been described as "a combination of the Exclusive Pleading and Potentiality Rules." *America Online, Inc.*, 207 F. Supp. 2d at 465 (citing *Town Crier*, 721 F. Supp. at 104). According to the

*Town Crier* court, the Exclusive Pleading rule establishes that an insurer's duty to defend should be determined solely by the allegations in the pleadings, and pursuant to the Potentiality Rule, an insurer must defend if there exists any " 'potentiality' that the claim as stated in the pleadings, could be covered by the policy." *Town Crier*, 721 F. Supp. at 102, n. 12. Hence, under Virginia law, the "obligation [of an insurer] to defend is broader than [the] obligation to pay and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." *Virginia Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co.*, 252 Va. 265, 268, 475 S.E.2d 264, 265 (1996) (quoting *Lerner v. General Ins. Co.*, 219 Va. 101, 104-05, 245 S.E.2d 249, 251 (1978)). As a result, an insurer is relieved of its burden to defend its insured "only when it appears clearly [that it] would not be liable under its contract for any judgment based upon the allegations." *Parker v. Hartford Fire Ins. Co.*, 222 Va. 33, 35, 278 S.E.2d 803, 805 (1981).

An insurer's duty to defend, however, is not limitless. As the *Town Crier* court noted, limiting the duty to defend to those cases where an insurer actually has some risk of liability minimizes potential conflict between a carrier and its insured. *Town Crier*, 721 F. Supp. at 101-03. In actuality, to require an insurer to defend a case where no realistic possibility of coverage exists could be contrary to the best interest of an insured. Under such circumstances, a carrier would have little reason to agree to a settlement requiring it to pay off a claim; yet reaching such a compromise might well be the best result for an insured who could be facing the specter of a finding of liability at trial without any insurance coverage to pay off the damages awarded. As a result, the Supreme Court of Virginia has determined that when "the only *reasonable construction* of the policy [involved] is that the insurer was under no obligation to defend the case against the insured [because] it would not be liable under its contract for any recovery therein had," the insurer "should refrain from interfering in any way with the insured in respect to its defense of the case." *Accident Corp. v. Washington Co.*, 148 Va. 829, 844, 139 S.E. 513, 517 (1927) (emphasis added).

Consistent with its decision in *Accident Corp.*, the Supreme Court has noted that an insurer is not required "to defend an action against the insured when, under *the allegations of the complaint*, it would not be liable under its contract for any recovery therein had." *Lerner*, 219 Va. at 104, 245 S.E.2d at 251 (citations omitted) (emphasis added). *See also Travelers Indem. Co. v. Obenshain*, 219 Va. 44, 245 S.E.2d 247 (1978) (reversing trial court and holding that the insurer had no duty, even to defend, when the insurance policy contained an exclusion for intentional acts and the allegations of the

underlying suit clearly alleged an intentional shooting); *Reisen v. Aetna Life & Cas. Co.*, 225 Va. 327, 331, 302 S.E.2d 529, 531 (1983) (duty to defend excused when insured's act of intentionally striking plaintiff fell within exclusion in policy).

Indeed, for over half a century, the Supreme Court has couched the duty-to-defend inquiry in doubtful coverage situations in terms of a "risk" analysis. As the Court found in *London Guarantee & Accident Co. v. White & Bros., Inc.*:

> [w]hile the duty to defend is, in the first instance, to be determined by the allegations of the notice of motion, yet if those allegations leave it in doubt whether the case alleged is covered by the policy, the refusal of the insurance company to defend is *at its own risk*, and if it turns out on development of the facts that the case is covered by the policy, the insurance company is necessarily liable for breach of its covenant to defend.

188 Va. 195, 199-200,49 S.E.2d 254, 255 (1948) (emphasis added). For the past sixty years, the Supreme Court of Virginia has consistently referred approvingly to this "risk" mode of analysis in almost all of its duty-to-defend cases. *See Travelers Indem. Co. v. Obenshain*, 219 Va. at 46, 245 S.E.2d at 249; *Norman v. Insurance Co. of North Am.*, 218 Va. 718, 724, 239 S.E.2d, 902, 905-06 (1978); *Lerner v. General Ins. Co.*, 219 Va. at 104, 245 S.E.2d at 251; *United States Fire Ins. v. Aspen Bldg. Corp.*, 235 Va. 263, 266-67, 367 S.E.2d 478, 479-80 (1988); *Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185, 189, 397 S.E.2d 100, 102 (1990); *Virginia Elec. & Power Co. v. Northbrook Prop & Cas. Ins. Co.*, 252 Va. 265, 269, 475 S.E.2d 264, 266.

Accordingly, after full consideration of all of the applicable authorities, this court adopts the following test to determine duty-to-defend issues under Virginia law: if any potential basis for coverage owed by an insurer to its insured reasonably may exist, based upon the contents of the applicable insurance policy and the totality of the allegations set out in the underlying lawsuit taken in the light most favorable to the existence of coverage, the insurer must defend that lawsuit or bear the sole risk for all damages and reasonable litigation expenses incurred by the insured, should the insured's right to coverage later be established. It is, therefore, through the lens of this analytical framework that this court must analyze whether NHI had the duty to defend RRR in the Kittrell Suit.

## A. *Application*

In its Brief in Support of Its Motion for Summary Judgment, RRR relies exclusively on Sections XII and XIII of the endorsements to the insurance policy NHI issued to RRR. In support of its position that NHI breached its contractual duties to RRR, RRR contends that some of the allegations in the Kittrell Suit implicate coverage under both of these sections. Specifically, as to Section XII, RRR asserts that some of Kittrell's claims arose out of both the "sale and service . . . of [RRR's] products, thereby triggering coverage under this section." See Garage Policy Extension Endorsement, Section XII. Further, as to Section XIII, RRR asserts that, in her suit, Kittrell alleged unintentional violations of both federal and state consumer laws, and that the violations arose out of "representations made pertaining to the lending of amounts for the purposes of purchasing or leasing of any automobile." See Garage Policy Extension Endorsement, Section XIII. Thus, according to RRR, Section XIII also provided a basis for coverage. Although RRR acknowledges that both Sections XII and XIII contain explicit exclusions for willful or knowing acts by representatives of the insured, RRR submits that some of the allegations in the Kittrell Suit can be read to allege acts by RRR's employees that would not fall within the scope of this policy exclusion. Consequently, RRR claims that NHI owed it a duty to defend the claims in the Kittrell suit. A careful reading of the contents of the Kittrell Suit, however, belies any contention that either Section XII or Section XIII is in any way implicated by the allegations in the Kittrell suit or that the alleged acts of RRR's employees set out in that lawsuit were anything but entirely willful.

### 1. *Section XII*

In Section XII of the policy, NHI agreed to defend and to pay all damages arising out of any claim against RRR for "product related damage." That phrase was defined as "damages incurred by any customer and arising out of the *sale, service,* or repair of your products other than damages as a direct result of an accident." See Garage Policy Extension Endorsement, Section XII (emphasis added). RRR posits that the conversion and installation of leather interior instead of the original cloth, in order to utilize the "extra

money" Kittrell contends RRR discovered during its fraudulent scheme,[2] constitutes "service" of product related damage, thereby implicating Section XII. RRR further contends that the Kittrell transaction was a sale, thereby triggering the duties set out in Section XII.

Under Virginia law, when the language of an insurance policy is clear, courts must give the words of the policy their plain and ordinary meaning and enforce the policy according to its terms. *Pilot Life Ins. Co. v. Crosswhite*, 206 Va. 558, 561, 145 S.E.2d 143, 146 (1965). *Webster's Dictionary* defines service as "the performance of any duties or work for another." *Random House Webster's Dictionary*, 1182 (2d ed. 1997). Therefore, RRR's decision to install leather interior cannot qualify as a "service" to Kittrell. In her motion for judgment, Kittrell alleged that RRR's actions were not for her benefit. In fact, Kittrell alleged that she had asked for the "extra money" to be returned to her, or alternatively to be used for the installation of an upgraded stereo. KMFJ, ¶ 24. Given that RRR did not undertake any work at Kittrell's request or for her benefit, RRR's unilateral decision to replace the cloth interior in the subject automobile with a leather interior, solely to hide its allegedly fraudulent scheme, cannot constitute "service" as that term is commonly understood.

As a result, the only potential basis upon which Section XII could apply to the facts alleged in the Kittrell Suit is premised upon RRR's argument that the Kittrell Suit was based upon a "sale" of the subject automobile. However, the plain and unambiguous language of the agreement between RRR and Kittrell negates any claim that the transaction between them involved a sale rather than a lease. Pursuant to Virginia law, sales and leases are separate and distinct types of transactions. Indeed, Virginia's Uniform Commercial Code is divided into separate articles for leases as distinguished from sales. See Va. Code §§ 8.2A-101 *et seq.* and §§ 8.2-101 *et seq.* Further, the language of the insurance policy at issue here draws a clear distinction between those sections that apply to either leases or sales and those which apply only to sales. The unambiguous language of Section XIII establishes that it applies to "the lending of amounts for the purpose of *purchasing or leasing* of any automobile" (emphasis added), while the language of Section XII relates *solely* to sales but not leases. The language of the contract clearly demonstrates that the parties knew how to use the terms "sale" and "lease," and this court cannot add terms to the contract which the parties did not

---

[2] See KMFJ, ¶¶ 24, 39.

include themselves. *Cf. Montague Mfg. Co. v. Homes Corp.*, 142 Va. 301, 311, 128 S.E. 447, 450 (1925) ("in the construction of a contract, courts have no power to read into it words of exclusion not contained therein"); *May Dep't Stores Co. v. Department of Envtl. Quality*, 29 Va. App. 589, 599, 513 S.E.2d 880, 885 (1999) (finding that, when the legislature included a given term in one portion of a statute, but did not include the term in a different provision of the statute, the omission was not inadvertent, and a court may not on its own insert the term in the second provision).

Nor do the contents of the Kittrell Suit support any viable argument that the transaction between Kittrell and RRR was anything other than a lease. Kittrell herself consistently referred to the transaction as a lease in her motion for judgment[3] and appended copies of both of her *Motor Vehicle Lease Agreements* to her motion for judgment as Exhibits A and B. *Id.*, Exs. A & B, ¶¶ 7, 16. RRR's position that the Kittrell Suit concerned a "sale," based solely upon a mere reference to "sales taxes" in the Kittrell Suit[4] and the bare allegation that "Rosenthal was a seller who advertises, solicits, and engages in consumer transactions,"[5] is entirely untenable in light of the totality of the allegations in the KMFJ and the clear language establishing that both Exhibits A and B were lease agreements. This court, therefore, concludes that RRR's reliance on the word "sale" in Section XII is entirely unavailing.

Nonetheless, even if this court were to find that RRR performed a service for Kittrell or that RRR sold Kittrell the vehicle, RRR's reliance on Section XII of the policy would still be unwarranted. Pursuant to Section XII(D)(1) of the policy, damages caused "by any willful, dishonest, fraudulent, intentional, or criminal act committed by any 'insured' " is specifically excluded from coverage. Therefore, if the Section XII(D)(1) exclusionary provision is triggered, the "four corners" of the NHI policy would necessarily defeat any claim that alleges an intentional act by employees of RRR. In Virginia, "exclusionary language in an insurance policy is to be construed most strongly against the insurer, and the burden is upon the insurer to prove that an exclusion applied." *Virginia Elec. & Power Co. v. Northbrook Prop. and Cas. Ins. Co.*, 252 Va. 265, 270, 475 S.E.2d 264, 266-

---

[3] *Id.*, ¶¶ 5-7, 11-20, 23-26, 29, 34, 37, 39-41, 43-46, 48-50.

[4] *Id.*, ¶ 19.

[5] *Id.*, ¶¶ 30-31. This allegation in paragraph 30 was seemingly made solely in order to qualify RRR as a supplier under the VCPA.

67 (1996) (citations omitted). Here, however, examination of the "four corners" of the KMFJ leads to the unmistakable conclusion that any "product related damage" that Kittrell may have impliedly alleged in the Kittrell Suit could only have arisen from willful, fraudulent, and intentional acts on the part of RRR employees. For example, in paragraph 34 of the KMFJ, she alleged that "Rosenthal had *willfully* violated the CPA by *falsely* informing her . . . that she needed to execute a second Motor Vehicle Agreement on less favorable terms after Rosenthal had already accepted and assigned the first Motor Vehicle Lease Agreement." In paragraphs 35 and 36 of the KMFJ, Kittrell alleged that RRR had engaged in virtually identical practices with other customers on other occasions. Further, in paragraph 25, Kittrell alleged that a leasing company that was going to purchase Kittrell's lease discovered an overcharge in the lease and that Rosenthal had "*fraudulently* represented to the lender that the additional charge was for a leather upgrade requested by [Kittrell]." In fact, in the immediately preceding paragraph, Kittrell had alleged a Rosenthal employee had informed her that she was required to accept the leather interior even though she had advised that she did *not want leather* and desired either a refund or an upgraded stereo. And, most tellingly, in paragraph 49, Kittrell alleged both that "Rosenthal committed multiple fraudulent acts in order to make more profit" and that "the entire transaction [was] riddled with fraud."

When the repeated allegations of intentional fraudulent acts are considered in conjunction with the contents of Section XII of the insurance policy, it is incontrovertible that the "eight corners" of these documents do not support any reasonable basis for NHI to be required to provide coverage for any claim premised upon Section XII. Accordingly, this court rejects RRR's argument that NHI owed it a duty to defend the Kittrell Suit based upon the contents of Section XII.

### 2. *Section XIII*

Section XIII of the policy is entitled "Truth in Lending Errors and Omissions Liability Coverage for Automobile Purchase or Leasing." It provides that NHI shall have "the right and the duty to defend any 'suit'. . .." seeking damages for any "*unintentional* violation of any Federal or State Consumer Credit Act . . . and which *arises out of the representations made pertaining to the lending of amounts* for the purpose of purchasing or leasing of any automobiles." Garage Policy Extension Endorsement Section XIII(A). Any willful or knowing violation of any such law is explicitly excluded from coverage. Garage Policy Extension Endorsement Section XIII(B).

In its brief, RRR points to three allegations in the Kittrell Suit as constituting violations of the Federal Consumer Leasing Act arising "out of representations made pertaining to lending of amounts." Pl's Brief in Support of Its Motion for Summary Judgment, p. 3. Those alleged acts are as follows:

(1) the itemization of the Gross Capitalized cost does not add up (KMFJ, ¶ 19);

(2) increased the agreed upon price of the Vehicle (KMFJ, ¶ 19); and

(3) increases to the sales and gross receipts tax (KMFJ, ¶ 19).

*Id.*

NHI responds: (1) that Section XIII has no application to the claims herein because none of Kittrell's claims arose from representations made pertaining to the lending of money for purposes of leasing any automobiles; and (2) any potential coverage would apply only to unintentional violations of any such consumer leasing acts, whereas the averments set out in the Kittrell Suit clearly alleged willful, knowing, or intentional violations. Once again, the court finds RRR's arguments unpersuasive.

First, nowhere within the "four corners" of the Kittrell Suit can one find any allegations of misrepresentations pertaining to any lending of money to Kittrell. The two lease agreements between RRR and Kittrell refer only to capitalized cost, depreciation, residual value, rental charges, and lease payments in describing the specifics of the transactions in issue. The "eight corners" rule precludes this court from assuming that the "rental charges" are in fact the carrying costs incurred by RRR to finance the subject automobile through the term of the lease. Thus, none of the misrepresentations allegedly made to Kittrell pertained to the lending of money for purposes of leasing an automobile. Therefore, Section XIII is not implicated by the allegations in the Kittrell Suit.

Second, as set out in the court's analysis of RRR's Section XII claim, no reasonably objective reader of the Kittrell Suit could conclude that Kittrell was alleging anything other than multiple willful and intentional acts of fraudulent conduct on the part of RRR personnel. The court rejects RRR's request that the court focus on isolated allegations in the Kittrell Suit in a manner devoid of their contextual placement. Specifically, as to the allegations relied upon on brief by RRR in its Section XIII claim, the allegation in paragraph 9 of the Kittrell Suit that "the itemization of the Gross Capitalized cost do not add up to the Gross Capitalized cost [sic] disclosed on the lease agreement," must be read in conjunction with paragraph 8 where Kittrell alleged that Rosenthal "*secretly, deceptively, and fraudulently* increased this

Gross Capitalized Cost." Similarly, the allegations contained in paragraph 19 that Rosenthal "increased the agreed upon price of the vehicle" and added further "increases to the sales and gross receipts tax" in computing the transaction's gross capitalized cost cannot be analyzed in isolation. Those allegations must be read in conjunction with the further allegation in paragraph 19 that, in computing the same calculation, Rosenthal "falsely indicated" the payment of a security deposit at the lease inception that had not been paid, and the allegation in paragraph 22 that, as a result of Rosenthal's "*manipulation*" of the gross capitalized cost, Kittrell's payments over the forty-eight month term of the lease increased by more than ten dollars per month. Indeed, the entire Kittrell Suit is replete with allegations that lead inexorably to the unmistakable conclusion that the Kittrell Suit is premised upon alleged intentional and willful acts of representatives of RRR. As such, RRR's Section XIII claim must also fail.

## III. *Conclusion*

Ultimately, the weakness of RRR's position in this case is perhaps best evidenced by what it has not brought to the court's attention rather than by what it has affirmatively argued. Based upon longstanding Virginia law, NHI bore the sole risk for all sums spent by RRR to defend and settle Kittrell's claims in the event that RRR's right to coverage could eventually be established. Nonetheless, even though it defended Kittrell's claims and eventually reached a settlement with her, RRR has not sought to introduce any evidence surrounding the actual positions of the parties in that litigation or the basis for the settlement reached in it. This court is confident that if a *bona fide* basis did in fact exist for NHI to have been responsible for providing coverage for any of the acts alleged in the Kittrell Suit, able counsel for RRR would have brought such evidence to this court's attention.

Instead, RRR has relied solely upon isolated allegations in Kittrell's motion for judgment, taken completely out of any reasonable contextual setting. As the sum of the allegations in the Kittrell suit, even when examined in the light most favorable to RRR's claim of coverage, are insufficient to establish any reasonable basis for potential coverage owed by NHI to RRR, NHI had no duty to defend the Kittrell Suit. Accordingly, the court grants judgment herein to the defendant New Hampshire Insurance Company. RRR, L.L.C.'s exception to this ruling is noted for each of the reasons ably articulated by Mr. Adams on brief and in oral argument.

*Order*

For the reasons set forth in this Court's opinion letter dated this date, it is ordered that the Plaintiff's Motion for Summary Judgment is denied; and it is further ordered that the Defendant's Motion for Judgment as a Matter of Law is granted; and this matter is dismissed with prejudice.